## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT J. PATTERSON, individually and as representative of a class of similarly situated persons of the Morgan Stanley Retirement Plan,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN STANLEY, Morgan Stanley Domestic Holdings, Inc., Morgan Stanley & Co., LLC, Morgan Stanley Retirement Plan Investment Committee, and John Does 1–30,<br><br>Defendants. | Case No. 1:16-CV-6568 (RJS)<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER RULES 12(B)(1) AND 12(B)(6)

Brian D. Boyle, *admitted pro hac vice*
Shannon M. Barrett, *admitted pro hac vice*
Meaghan VerGow, *admitted pro hac vice*
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
bboyle@omm.com
sbarrett@omm.com
mvergow@omm.com

Pamela A. Miller
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pmiller@omm.com

*Attorneys for Defendants*

1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

BACKGROUND .................................................................. 2

LEGAL STANDARD ............................................................. 4

ARGUMENT .................................................................... 4

I.    PLAINTIFF'S LACK OF STANDING REQUIRES DISMISSAL OF THE BULK OF HIS CLAIMS UNDER RULE 12(b)(1) ................................... 4

II.   PLAINTIFF'S CLAIMS AGAINST MORGAN STANLEY AND THE MS BOARD MEMBERS MUST BE DISMISSED ................................... 7

III.  PLAINTIFF'S CHALLENGES TO THE INCLUSION OF PROPRIETARY FUNDS IN THE PLAN LINEUP ARE MERITLESS .............. 8

    A.   The Choice Of Affiliated Funds For A Small Minority Of Plan Options Does Not Give Rise To An Inference Of Disloyalty ................... 8

    B.   Plaintiff Does Not Plausibly Allege That The MS Funds Were Retained Pursuant To A Flawed Process ................................... 10

        1.   Plaintiff's Allegation That Three Of The MS Funds Performed Poorly Over The Class Period Is An Improper (And Incorrect) Hindsight Critique Signaling Nothing About The Fiduciaries' Process ................................... 10

        2.   Plaintiff's Allegations Respecting The MS Funds' Fees Also Do Not Show An Imprudent Process ................................... 14

    C.   Even If Plaintiff's Claims Were Plausibly Alleged, They Would Be Precluded By ERISA's Statute Of Limitations ........................... 16

    D.   Plaintiff's Prohibited Transaction Claims Must Be Dismissed ............... 17

        1.   Plaintiff's Prohibited Transaction Claims Are Precluded By ERISA's Six-Year Statute Of Repose ........................... 17

        2.   The Amended Complaint Establishes The Application Of Prohibited Transaction Exemption 77-3, Permitting The Offering Of Affiliated Mutual Funds ................................... 18

IV.  PLAINTIFF'S CHALLENGE TO THE OFFERING OF THE BLACKROCK FUNDS FAILS AS A MATTER OF LAW ............................... 20

    A.   Plaintiff's Critique Of The BlackRock Funds' Performance Fails To State A Claim ........................................... 20

    B.   Plaintiff's Fee Challenge Lacks Merit ................................... 22

**TABLE OF CONTENTS**
**(continued)**

| | | Page |
|---|---|---|

        C.      There Is No Substance To Plaintiff's Disloyalty Theory..........................23

   V.      PLAINTIFF'S MONITORING CLAIM FALLS WITH PLAINTIFF'S FAILURE TO PLAUSIBLY ALLEGE ANY UNDERLYING BREACH.........24

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. GreatBanc Trust Co.*,
   835 F.3d 670 (7th Cir. 2016) ........................................................................ 19, 20

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
   436 F.3d 82 (2d Cir. 2006) ................................................................................ 4

*Amgen Inc. v. Harris*,
   136 S. Ct. 758 (2016) ...................................................................................... 12

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
   464 F.3d 338 (2d Cir. 2006) ............................................................................ 22

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
   446 F.3d 728 (7th Cir. 2006) .......................................................................... 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 4, 10, 23, 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 4

*Bendaoud v. Hodgson*,
   578 F. Supp. 2d 257 (D. Mass. 2008) ............................................................ 5, 6

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) .......................................................................... 20

*Brown v. Owens Corning Inv. Review Comm.*,
   622 F.3d 564 (6th Cir. 2010) .......................................................................... 16

*Caltagirone v. N.Y. Cmty. Bancorp, Inc.*,
   257 F. App'x 470 (2d Cir. 2007) ...................................................................... 5

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) .................................................................... 17, 18

*Donovan v. Bierwirth*,
   680 F.2d 263 (2d Cir. 1982) .............................................................................. 9

*Dupree v. Prudential Ins. Co. of Am.*,
   No. 99-8337-Civ.-JORDAN, 2007 WL 2263892 (S.D. Fla. Aug. 10, 2007) .......... 9

*Fifth Third Bancorp. v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014) ...................................................................................... 2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Figas v. Wells Fargo & Co.*,
No. 08-4546, 2010 WL 2943155 (D. Minn. Apr. 6, 2010) .................................... 18

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ........................................................................... 15, 22

*In re Calpine Corp. ERISA Litig.*,
No. C-03-1685-SBA, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ................... 25

*In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
917 F. Supp. 2d 231 (S.D.N.Y. 2013) ................................................................... 5

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................................... 5

*Jenkins v. Yager*,
444 F.3d 916 (7th Cir. 2006) ........................................................................... 13, 21

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008) .............................................................................................. 5

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
No. 07-CV-9329, 2014 WL 4851816 (S.D.N.Y. Sept. 20, 2014) ........................ 17

*Leber v. Citigroup, Inc.*,
No. 07-CV-9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ............... 17, 18, 19

*Lewis v. Casey*,
518 U.S. 343 (1996) .............................................................................................. 6

*Loomis v. Exelon Corp.*,
658 F.3d 668 (7th Cir. 2011) ........................................................... 14, 15, 16, 22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................................. 5

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) .................................................................................. 5

*Mehling v. N.Y. Life Ins. Co.*,
163 F. Supp. 2d 502 (E.D. Pa. 2001) ................................................................... 19

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
No. 15 CIV. 9936 (LGS), 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) .............. 18

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) .................................................................................. 6

iv

## TABLE OF AUTHORITIES
### (continued)

Page

*Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013)................................................................................. passim

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011)............................................................................... 14, 15

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014)....................................................................................... 6

*Rinehart v. Akers*,
    722 F.3d 137 (2d Cir. 2013)..................................................................................... 25

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)......................................................................................... 3

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004)....................................................................................... 6

*Taveras v. UBS AG*,
    612 F. App'x 27 (2d Cir. 2015) ................................................................................. 5

*Taylor v. United Techs. Corp.*,
    No. 3:06-cv-1494 (WWE), 2009 WL 535779 (D. Conn. Mar. 3, 2009) ......... 13, 15

*Tibble v. Edison Int'l*,
    135 S. Ct. 1823 (2015)............................................................................................... 8

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013) ............................................................................ 14, 15

*White v. Chevron Corp.*,
    No. 16-CV-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ........... 13, 22

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ............................................................................ 17, 18

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    325 F. App'x 31 (2d Cir. 2009) ............................................................................... 23

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008)...................................................................... 16

## **STATUTES**

29 U.S.C. § 1104..................................................................................................................... 7

## TABLE OF AUTHORITIES
### (continued)

**Page**

29 U.S.C. § 1106 ................................................................................................... 7

29 U.S.C. § 1106(a)(1)(D) ................................................................................... 17

29 U.S.C. § 1106(b) ............................................................................................ 17

29 U.S.C. § 1113(1) ....................................................................................... 8, 17

29 U.S.C. § 1113(2) ............................................................................................ 16

## OTHER AUTHORITIES

42 Fed. Reg. 18,734 (Apr. 8, 1977) .................................................................... 18

56 Fed. Reg. 10724 (Mar. 13, 1991) ..................................................................... 9

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), reprinted in 1974 U.S.C.C.A.N.
    5038 ................................................................................................................. 8

Morgan Stanley Investment Management: Mutual Funds, available at
    https://www.morganstanley.com/im/en-us/individual-investor/product-and-
    performance/mutual-funds.desktop.html (last visited Feb. 9, 2017) ............. 9

Morningstar, BlackRock LifePath Index 2055 Fund Institutional Shares –
    Expense, available at
    http://financials.morningstar.com/fund/expense.html?t=LIVIX&region=usa&c
    ulture=en-US (last visited Feb. 9, 2017) ...................................................... 23

Morningstar, Real Estate Fund – Ratings & Risk, available at
    http://performance.morningstar.com/fund/ratings-
    risk.action?t=MRLAX&region=usa& culture=en-US (last visited
    Feb. 9, 2017) ................................................................................................. 12

Morningstar, Small Company Fund – Expense, available at
    http://financials.morningstar.com/fund/expense.html?t=MFLLX&region=usa
    &culture=en-US (last visited Feb. 9, 2017) .................................................. 14

Nasdaq, Morgan Stanley Institutional Ownership, available at
    http://www.nasdaq.com/symbol/ms/institutional-holdings (last visited
    Feb. 9, 2017) ................................................................................................. 24

## RULES

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Fed. R. Civ. P. 23 ................................................................................................................ 6

## **REGULATIONS**

29 C.F.R. § 2509.75-8 ........................................................................................................ 25

## <u>INTRODUCTION</u>

Plaintiff's complaint is a post hoc attack on select funds made available to participants in the Morgan Stanley 401(k) Plan (the "Plan"). Plaintiff himself invested in only two of those funds and left the Plan altogether in 2014. He nevertheless asserts a broadside challenge against roughly a third of the Plan's offerings, which he says were imprudently and disloyally selected. Plaintiff lacks standing to assert most of his claims, and the Amended Complaint fails to state a claim as a matter of law as to any of the challenged funds.

The Amended Complaint challenges the prudence of the Plan fiduciaries' inclusion of these funds based on the funds' supposed poor performance. But Second Circuit precedent precludes attempts to infer imprudence from underperformance. Rather, a plaintiff alleging fiduciary-breach claims under the Employee Retirement Income Security Act of 1974 ("ERISA") must allege facts supporting the inference that the process for monitoring the Plan's investments was flawed, facts that are conspicuously absent from the Amended Complaint. Plaintiff is also wrong about these funds' performance: an examination of the performance information available to the Plan fiduciaries during the class period reveals that every single one of the challenged funds *outperformed* its benchmark for at least part of the period.

Similarly unavailing are plaintiff's attacks on the Plan's investment management fees. ERISA does not require a fiduciary to choose the cheapest option on the market—investment selection involves consideration of a broad array of qualitative and quantitative considerations apart from price. Moreover, there is nothing nefarious about the fact that the mutual fund fees were higher than fees charged for proprietary separate accounts with similar strategies. Mutual funds and separate accounts are entirely different investment vehicles, and mutual funds offer investors an array of regulatory benefits that often come at a higher cost.

1

Plaintiff attempts to bolster his imprudence challenge with wholly conclusory allegations that defendants' investment decisions were disloyal. These contentions go nowhere. Plaintiff is incorrect that the inclusion of a half-dozen Morgan Stanley-affiliated mutual funds in the Plan's broadly diversified lineup was self-evidently disloyal: ERISA expressly allows financial services companies to include affiliated funds in retirement plans. And plaintiff's theory that the Plan fiduciaries selected BlackRock-advised funds to further a business relationship is nothing but rank speculation. Nowhere does plaintiff allege *facts* showing disloyalty. On the contrary, plaintiff's limited facts suggest a robust, unconflicted process surrounding the monitoring and retention of these funds: they constituted a small minority of the Plan's 33-plus options and most were removed during the class period, belying plaintiff's suggestion that the Plan fiduciaries were blindly driven by self-interest in making investment decisions.

Other deficiencies abound: plaintiff inexplicably continues to assert claims against non-fiduciary defendants, and plaintiff's prohibited transaction claims are barred by ERISA's statute of repose. The Supreme Court has recognized that dismissal motions are an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014). The Amended Complaint should be dismissed with prejudice.

## BACKGROUND

Eligible Morgan Stanley[1] employees can save for retirement via their employer-sponsored defined contribution plan. Roughly 60,000 current and former Morgan Stanley employees participate in the Plan, which is funded by salary deferments, matching and other employer contributions. Am. Compl. ("AC") ¶¶ 2, 6 (ECF No. 62). Morgan Stanley Domestic Holdings, Inc. ("MSDHI"), an indirect subsidiary of Morgan Stanley, is currently the Plan's

---

[1] Defendant Morgan Stanley is a publicly traded financial services company. AC ¶ 26.

sponsor.  AC ¶ 28.  The predecessor to Morgan Stanley & Co., LLC ("MS&Co") formerly served in that role.  AC ¶ 29.  The Morgan Stanley Retirement Plan Investment Committee (the "Committee") is responsible for selecting and monitoring the investments in the Plan lineup.  AC ¶ 30; Declaration of Meaghan VerGow in Support of Defendants' Motion to Dismiss ("VerGow Decl."), Ex. A (Plan Document) at 58–60.[2]  Plan participants invest their individual accounts among the various options in the Plan's lineup as they wish.  *See* AC ¶ 37.

Throughout the class period, the Plan offered participants a broad range of investment options to choose from, reflecting a variety of asset classes, risk profiles, expenses, and investment management philosophies and styles.  VerGow Decl., Exs. B–D (2013–2015 Form 5500s).  The lineup included at least 33 different investment options during the class period.  *See id*.  Seven of those investment options were advised by a Morgan Stanley affiliate; the rest of the Plan's options were advised by third parties.  *See, e.g.*, VerGow Decl., Ex. C (2014 Form 5500) at 12.[3]  The Committee made continual adjustments to the Plan's investment lineup, including by adding and removing funds, and by transitioning to lower-cost share classes, collective trusts, and separate accounts.  *See* VerGow Decl., Exs. B–D (2013–2015 Form 5500s); AC ¶ 103 n.10.

Plaintiff Robert Patterson is a former participant in the Plan.  AC ¶ 25.  On August 19, 2016, he brought suit against various Morgan Stanley-related defendants, including the current

---

[2] On a dismissal motion, the Court may consider "any statements or documents . . . reference[d] in the complaint]," any documents "filed with the SEC," and documents that plaintiff "either possessed or knew about and upon which [he] relied in bringing the suit."  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).  Plaintiff specifically alleges that his Amended Complaint is based on "an investigation of public documents, including filings with the U.S. Department of Labor and U.S. Securities and Exchange Commission, documents provided to Plaintiff because of his status as a Plan participant, and analytical investment data compiled by third party sources."  AC ¶ 5.

[3] Six of the options were the proprietary mutual funds now challenged in the Amended Complaint.  The other proprietary option was a separate account, which was replaced by a non-proprietary fund in 2014 and is not at issue here.  VerGow Decl., Ex. C (2014 Form 5500) at 14.

and former members of the Board of Directors of Morgan Stanley (the "MS Board Members"),

alleging fiduciary-duty violations under ERISA.  Compl. ¶¶ 17–22.  Plaintiff filed the Amended

Complaint on January 10, 2017.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged

in the complaint, and thus a "complaint must demonstrate 'more than a sheer possibility that a

defendant has acted unlawfully.'"  *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan*

*Stanley Inv. Mgmt.* ("*St. Vincent*"), 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)).[4]  To survive a dismissal motion, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*,

556 U.S. at 678 (citation omitted).  A plaintiff must offer "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

## I.  PLAINTIFF'S LACK OF STANDING REQUIRES DISMISSAL OF THE BULK OF HIS CLAIMS UNDER RULE 12(b)(1)

As an initial matter, plaintiff lacks standing with respect to all but two of the funds he

now challenges.  *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82,

88 (2d Cir. 2006).  Although plaintiff challenges every single Morgan Stanley mutual fund in the

Plan and the entire suite of target date funds offered to participants, he invested in only two of

these thirteen funds, the Morgan Stanley Global Real Estate Fund (the "Real Estate Fund") and

the Morgan Stanley International Equity Fund.  VerGow Decl., Ex. E (Quarterly Plan Statements

---

[4] The legal standard for motions to dismiss under Fed. R. Civ. P. 12(b)(1) is addressed *infra*.

2011–2014).[5]  Plaintiff has suffered no injury related to the other eleven funds he challenges in the Plan's lineup—depriving him of standing to maintain claims respecting those funds.  *See, e.g.*, *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant"); *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992) (explaining that a constitutionally sufficient injury in fact must "affect the plaintiff in a personal and individual way").

In a defined contribution plan, losses incurred by a particular fund are isolated to participants who invest in that fund.  *See, e.g.*, *LaRue v. DeWolff, Boberg & Assocs., Inc.*,  552 U.S. 248, 256 (2008) (ERISA "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account"); *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 264 (D. Mass. 2008) ("[I]f an asset in a defined contribution plan is harmed, the loss is not spread.  It is visited entirely on the participant or participants who hold the impaired asset."). Courts routinely dismiss claims related to funds in which an ERISA plaintiff did not invest.  *See, e.g.*, *Taveras*, 612 F. App'x at 29 (plaintiff lacked standing because she never invested in the fund option subject to complaint); *Caltagirone v. N.Y. Cmty. Bancorp, Inc.*,  257 F. App'x 470, 473 (2d Cir. 2007) (plaintiff lacked standing where she "never chose the [challenged] investment option . . . and her Savings Plan account never included [the challenged] shares").[6]  It is

---

[5] Plaintiff's quarterly investment statements were provided to him as a Plan participant and so are incorporated by reference into the Amended Complaint.  *See* AC ¶ 5; *supra* note 2.  The Court may consider documents outside the pleadings in determining its subject matter jurisdiction in any event.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[6] *See also, e.g.*, *In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 917 F. Supp. 2d 231, 234–35 (S.D.N.Y. 2013) (dismissing claims regarding the seven funds in which the plaintiff did not invest; *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006) ("Plaintiffs do not have standing to assert any claims [as to "the sixty-

immaterial to the standing inquiry that plaintiff brings this suit as a putative class action, "for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quotations and citations omitted).[7]  Because plaintiff never selected the vast majority of investment options he purports to challenge, he has no injury and the Amended Complaint's claims respecting those options must be dismissed.

Moreover, plaintiff closed his Plan account in April 2014.  AC ¶ 25.  He is therefore a *former* participant with no personal stake in the future management of the Plan and cannot demonstrate the "real or immediate threat of injury" necessary for injunctive relief.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."); *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (to seek injunctive relief, a plaintiff "cannot rely on past injury . . . but must show a likelihood that he will be injured in the future" (quotation omitted)); *Bendaoud*, 578 F. Supp. 2d at 267–68 (concluding that because "[p]urely prospective relief" could not affect a former plan participant, "he lack[ed] standing to seek it").  Because plaintiff no longer participates in the Plan, he faces no threat of future injury from its management and lacks standing to pursue his claim for forward-looking relief.  *See* AC ¶ 240.

---

eight funds of which Plaintiffs own no shares"] because Plaintiffs cannot satisfy the standing requirements.").

[7] Plaintiff's status as an appropriate representative of a putative class is properly resolved on a motion for class certification under Fed. R. Civ. P. 23.  *See, e.g.*, *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014).

## II.   PLAINTIFF'S CLAIMS AGAINST MORGAN STANLEY AND THE MS BOARD MEMBERS MUST BE DISMISSED

In the initial complaint, plaintiff named 22 individual members of the Morgan Stanley Board of Directors as defendants.  Defendants immediately objected, demonstrating that the MS Board Members had no fiduciary duties with respect to the Plan.  Accordingly, in a November 10, 2016 letter to the Court, plaintiff represented that he would remove these defendants in the Amended Complaint.  ECF No. 42 at 3.  Plaintiff's Amended Complaint does in fact drop the MS Board Members as named defendants, but then inexplicably reasserts claims against them as unnamed John Doe defendants.  AC ¶ 31.  This allegation must be corrected; the MS Board Members are not proper defendants in this case.

Plaintiff's claims all depend on each defendant's having fiduciary responsibility with respect to the Plan.  *See* 29 U.S.C. §§ 1104, 1106.  Plaintiff originally alleged that the MS Board Members had authority to appoint the members of the Committee and were responsible for the Plan's oversight.  *See* Compl. ¶ 22.  The Plan Document makes clear, however, that it was two different entities that had the authority to appoint members of the Committee.  VerGow Decl., Ex. A (Plan Document) at 3, 58–60.  The Amended Complaint makes this correction and drops the specific allegations about the MS Board Members' purported role.  *See* AC ¶¶ 28, 29.[8]  The MS Board Members, now "John Does," should be dismissed from this action completely.

Morgan Stanley should likewise be dismissed.  As the Amended Complaint reflects and the Plan Document confirms, Morgan Stanley is not the plan sponsor and has no fiduciary role with respect to the Plan.  AC ¶¶ 26–29; VerGow Decl., Ex. A (Plan Document) at 3.  Because

---

[8] The Amended Complaint fails to make this correction across the board, *see* AC ¶¶ 31, 234 (still alleging that the MS Board Members have appointment authority), but the uncorrected allegations are in conflict with plaintiff's new allegations, not to mention the Plan Document.

plaintiff alleges no non-conclusory basis for inferring that Morgan Stanley has any fiduciary connection to his claims, Morgan Stanley also is not a proper defendant.

## III.    PLAINTIFF'S CHALLENGES TO THE INCLUSION OF PROPRIETARY FUNDS IN THE PLAN LINEUP ARE MERITLESS

Plaintiff's leading challenge is to the Plan fiduciaries' inclusion of six Morgan Stanley-affiliated mutual funds (the "MS Funds") in the Plan lineup.  Plaintiff alleges that three of the MS Funds were poor performers, that all had excessive fees, and that these allegations establish a failure of prudence and loyalty on the part of the Plan fiduciaries.  He is wrong.  Plaintiff alleges no facts, as he must, supporting an inference of either an imprudent process or disloyal decision-making.  Quite the opposite: plaintiff's allegations reveal an attentive fiduciary process, in which the Plan's small assortment of proprietary options was *reduced* over the class period.

### A.    The Choice Of Affiliated Funds For A Small Minority Of Plan Options Does Not Give Rise To An Inference Of Disloyalty

Plaintiff suggests that the Plan fiduciaries retained affiliated investment options in the Plan lineup in order to drive investment management revenue to Morgan Stanley.  AC ¶¶ 62–64, 83, 204.[9]  But there is nothing inherently disloyal about offering proprietary funds in an in-house plan.  Congress and the Department of Labor have both recognized that financial services companies may justifiably choose to offer their own investment products and services to their in-house retirement plans.  *See, e.g.*, H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5094 ("[I]t would be contrary to normal business practice to require the plan of an insurance company to purchase its insurance from another insurance company.");

---

[9] To the extent that plaintiff purports to challenge the "selection" of these funds (*e.g.*, AC ¶¶ 2–3, 10, 15, 58, 98, 111, 134), his claims are barred by ERISA's six-year statute of repose. 29 U.S.C. § 1113(1).  Plaintiff offers no allegation that any of these funds was added to the Plan lineup within the six year period before he filed this action, and thus plaintiff may assert only claims alleging fiduciary breaches in the *retention* of these funds during the repose period.  *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015).

Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg.

10724, 10730 (Mar. 13, 1991) (same).  As courts have recognized, fiduciaries may wish to offer

proprietary products for a variety of reasons, including their deep familiarity with the investment

managers and confidence in "their abilities and responsiveness."  *Dupree v. Prudential Ins. Co.*

*of Am.*, No. 99-8337-Civ.-JORDAN, 2007 WL 2263892, at *10 (S.D. Fla. Aug. 10, 2007); *see*

*Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (an "incidental[] benefit[]" to the

company does not preclude a "reasonabl[e] conclu[sion]" that a decision serves participants' best

interests).  Accordingly, ERISA and its implementing regulations authorize the use of affiliated

products and services in retirement plans.  *See infra* at 18–20.

To be sure, ERISA requires that fiduciaries act with "an eye single to the interests of the

participants and beneficiaries."  *Donovan*, 680 F.2d at 271.  But plaintiff does not allege any

non-conclusory facts suggesting that the fiduciaries acted disloyally.  Indeed, the facts apparent

from the face of the Amended Complaint and incorporated materials support the conclusion that

the fiduciaries engaged in an entirely impartial process in selecting and retaining the Plan lineup:

- The vast majority of options in the lineup were managed by unaffiliated advisors.[10]

- Many of the investment options were in strategies for which proprietary mutual fund alternatives were available, but the Plan fiduciaries chose non-affiliated funds.[11]

- The MS Funds were successful market-tested products.[12]

---

[10] VerGow Decl., Ex. C (2014 Form 5500) at 12.

[11] For example, in 2015, the Plan offered unaffiliated investments in several strategies for which affiliated alternatives existed, including, for example, a Core Fixed Income Fund (MPFIX), a Foreign Bond Fund (DINDX), and a Low Duration Fund (MPLDX).  *Compare, e.g.*, VerGow Decl., Ex. D (2015 Form 5500) at 13, 19, *with* Morgan Stanley Investment Management: Mutual Funds, available at https://www.morganstanley.com/im/en-us/individual-investor/product-and-performance/mutual-funds.desktop.html (last visited Feb. 9, 2017).

- The Plan fiduciaries exercised their discretion to remove several of the MS Funds from the Plan lineup.[13]

These are hallmarks of a careful, loyal process—not a conflicted, dysfunctional one.  *Iqbal*, 556 U.S. at 682 (a claim must allege facts plausibly suggesting improper conduct, rather than an "obvious alternative explanation").

### B.   Plaintiff Does Not Plausibly Allege That The MS Funds Were Retained Pursuant To A Flawed Process

Plaintiff also argues that defendants imprudently retained the MS Funds.  To survive dismissal, plaintiff cannot rely on hindsight judgments but must rather allege facts that show a deficiency in the fiduciaries' process, and that "a prudent fiduciary in like circumstances would have acted differently."  *See St. Vincent*, 712 F.3d at 720.  Plaintiff has not met this standard.

### 1.   *Plaintiff's Allegation That Three Of The MS Funds Performed Poorly Over The Class Period Is An Improper (And Incorrect) Hindsight Critique Signaling Nothing About The Fiduciaries' Process*

Plaintiff alleges that over the class period three specific funds—the Small Company Fund, the Real Estate Fund, and the Morgan Stanley Institutional Mid-Cap Growth Fund (the "Mid-Cap Growth Fund")—underperformed their benchmarks and other fund alternatives.  AC ¶¶ 85–90.  This hindsight assessment is both irrelevant and misleading.  Under ERISA, fiduciary actions are evaluated "based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight."  *St. Vincent*, 712 F.3d at 716 (quotations and citations omitted).  While ERISA does not require plaintiffs to come forward

---

[12] *See, e.g.*, VerGow Decl., Ex. F (MSIM 2013 N1-A Registration Statement) at 11, 41–44 (disclosing that the Morgan Stanley Small Company Growth Fund (the "Small Company Fund") has been in operation since 1989, with above-benchmark 1- and 10-year returns for its I-class shares, and over $1.3 billion in assets under management).

[13] VerGow Decl., Ex. C (2014 Form 5500) at 14 (showing removal of MSIM Emerging Markets Debt Fund); AC ¶¶ 104, 122 (noting that the Committee removed two MS Funds in February 2016).

with facts about the fiduciaries' process that only an insider would know, a complaint will be dismissed if it does not allege facts plausibly supporting an inference of an imprudent process. *Id.* at 718 (dismissing complaint). Poor performance alone does not suffice to carry this pleading burden, nor can a plaintiff simply allege that "better investment opportunities were available at the time of the relevant decisions." *Id.*; *see id.* at 716 ("[The prudent man] standard focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." (quotations and citations omitted; some alterations in original)).

The Amended Complaint examines the performance of the three challenged funds looking backward over the full class period, from shortly before they were removed. *See* AC ¶¶ 105, 122, 135. These allegations permit no inferences about the judgments the Plan fiduciaries made *during* the class period, based on the information available to them at that time. Contemporaneous information from plan documents tells a very different story about each fund:

*Small Company Fund:*

- Outperformed benchmarks on long-term trailing basis by 15% in 2012[14];

- Outperformed benchmarks on both short-term and long-term basis by up to 33% in 2013[15];

- Rated Gold ("buy") by Morningstar during the class period.[16]

*Mid-Cap Growth Fund:*

- Outperformed benchmarks on long-term trailing basis by over 200% in 2012[17];

---

[14] VerGow Decl., Ex. G (June 2012 Fee Disclosure) at 6.

[15] VerGow Decl., Ex. H (Nov. 2013 Fee Disclosure) at 9.

[16] VerGow Decl., Ex. I (2014 Morningstar Analyst Report for Small Company Fund). The Amended Complaint relies on Morningstar information about each of the challenged funds.

- Still outperformed benchmarks on long-term trailing basis in 2013[18];

- Rated Gold by Morningstar during the class period.[19]

*Real Estate Fund:*

- Outperformed benchmarks on short-term and long-term trailing basis in 2012[20];

- Performed on par with benchmarks in 2013[21];

- Rated "four stars" by Morningstar on a ten-year trailing basis.[22]

The point is not that every fiduciary would necessarily have retained these funds in the face of this performance record.  But plaintiff cannot plausibly allege that a prudent fiduciary faced with this performance data—data demonstrating that the funds were outperforming industry benchmarks—would have acted differently.  *See Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016) (requiring courts to consider "whether the complaint in its current form has plausibly alleged that a prudent fiduciary in the same position could not have concluded that the alternative action would do more harm than good" (quotations and citations omitted)); *St. Vincent*, 712 F.3d at 720 (concluding that for a plaintiff "relying on inferences from circumstantial allegations," the prudent man "standard generally requires the plaintiff to allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently").  Monitoring

---

[17] VerGow Decl., Ex. G (June 2012 Fee Disclosure) at 6.

[18] VerGow Decl., Ex. H (Nov. 2013 Fee Disclosure) at 8.

[19] VerGow Decl., Ex. J (2014 Morningstar Analyst Report for Mid-Cap Growth Fund).

[20] VerGow Decl., Ex. G (June 2012 Fee Disclosure) at 7.

[21] VerGow Decl., Ex. H (Nov. 2013 Fee Disclosure) at 9.

[22] *See* Morningstar, Real Estate Fund – Ratings & Risk, available at http://performance.morningstar.com/fund/ratings-risk.action?t=MRLAX&region=usa&culture=en-US (last visited Feb. 9, 2017).

investment performance requires a fiduciary to "balance[e] competing interests under conditions of uncertainty," and ERISA's duty of prudence does not seat fiduciaries on a "razor's edge" in striking that balance. *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006). Fiduciaries have latitude to steer a steady course through short-term performance fluctuations, in view of long-term considerations (not to mention the broad range of other factors relevant to lineup decisions). *See, e.g.*, *Jenkins v. Yager*, 444 F.3d 916, 925–26 (7th Cir. 2006) (recognizing that fiduciary could prudently pursue long-range strategy even "during years of lower performance").[23] Plaintiff has not shown that the contemporaneous information about these funds would have driven any reasonable fiduciary to drop them immediately.

Plaintiff's comparison of these funds to one or two of their peer funds does not improve his claim. *See* AC ¶¶ 105, 122, 135. This critique, too—looking backwards over the full class period—is pure hindsight.[24] And the Second Circuit has stressed that imprudence is not established by simply alleging that there were better options available at the time. *St. Vincent*, 712 F.3d at 718. There are a broad range of high-quality investment options available to plan fiduciaries at any given time. ERISA simply demands that fiduciaries select from those myriad options using a prudent process. Plaintiff offers no basis for doubting the soundness of the fiduciaries' process here. *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at

---

[23] In fact, plaintiff's counsel conceded at the December 15, 2016 pre-motion conference that fiduciaries should generally wait three years before removing an underperforming fund. *See* Transcript of Pre-Motion Conference at 7:22–8:7 ("In the investment advisory business if you underperform the first year, that would be fine. The second year you are likely put on watch. The third year if you continue to underperform, then you are likely going to be replaced.").

[24] The comparisons to the Vanguard funds do not even make sense, *see* AC ¶¶ 99, 123: they are index funds, not actively-managed funds like the MS Funds. *See Taylor v. United Techs. Corp.*, No. 3:06-cv-1494 (WWE), 2009 WL 535779, at *10 (D. Conn. Mar. 3, 2009), *aff'd by* 354 F. App'x 525 (2d Cir. 2009) (fiduciaries are not required to choose index funds instead of actively managed funds "so long as the fiduciary's decision meets the prudent person standard").

*17 (N.D. Cal. Aug. 29, 2016) (dismissing complaint alleging that underperforming fund should have been removed earlier, holding that "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation," and that the eventual removal of the fund "create[d] a plausible inference that the Plan fiduciaries were attentively monitoring the fund").

2.   *Plaintiff's Allegations Respecting The MS Funds' Fees Also Do Not Show An Imprudent Process*

Plaintiff alleges that the fees charged by the MS Funds, ranging from 0.51% to 0.99%, were unreasonable.  In fact, these fees were for the most part similar to those for the comparable mutual fund options highlighted in the Amended Complaint.  *Compare, e.g.*, AC ¶ 69, *with* VerGow Decl., Ex. K (Prudential Global Real Estate Fund Summary Prospectus) (reflecting that Real Estate Fund had lower fees than plaintiff's Prudential comparator), *and* AC ¶ 123 (reflecting that the Mid-Cap Growth Fund charged the same fee as plaintiff's T. Rowe Price comparator).[25]  Instead of focusing on *mutual fund* comparators, the core of plaintiff's excessive fee allegation is a false contrast between the fees of the MS Funds and the fees of "separate accounts containing like investment strategies."  AC ¶ 204.  Once again, plaintiff's comparison is misleading, and has been routinely rejected by courts reviewing ERISA complaints.  *See Tibble v. Edison Int'l*, 729 F.3d 1110, 1134 (9th Cir. 2013), *vac'd on other grounds by* 135 S. Ct. 1823 (2015); *Loomis v. Exelon Corp.*, 658 F.3d 668, 673 (7th Cir. 2011); *Renfro  v. Unisys Corp.*, 671 F.3d 314, 318 (3d Cir. 2011).

[25] As above, plaintiff's comparison of the actively-managed MS Funds' fees to fees for passively-managed index-based products is inappropriate.  *Supra* note 24.  Furthermore, while the Small Company Fund's expense ratio was higher than plaintiff's T. Rowe Price comparator, it was significantly lower than its Morningstar category average.  *See* Morningstar, Small Company Fund – Expense, available at http://financials.morningstar.com/fund/expense.html?t=MFLLX&region=usa&culture=en-US (last visited Feb. 9, 2017).

Mutual funds and separate accounts are distinct investment products, with different bundles of services and thus different pricing.  Mutual funds "have a variety of unique regulatory and transparency features" that make any attempt to compare them to institutional investment vehicles, like separate accounts, an "apples-to-oranges comparison."  *Tibble*, 729 F.3d at 1134. Plaintiff's allegations that mutual funds perform the "same function" as separate accounts, *see* AC ¶ 76, and that mutual fund managers "provide[] comparable administrative services to both . . . mutual funds and separate account clients," AC ¶ 78, miss the mark.  The higher fees associated with mutual funds cover the additional costs of complying with the "reporting, governance, and transparency requirements that do not apply to other investment vehicles." *Renfro*, 671 F.3d at 318; *see also Tibble*, 729 F.3d at 1134; *Loomis*, 658 F.3d at 672–73 (upholding the dismissal of claims challenging the prudence of mutual funds by noting, inter alia, that "[m]utual funds are regulated under the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Company Act of 1940").  Recognizing these differences, courts have repeatedly held that fiduciaries may reasonably select mutual funds for their distinct advantages even though separate accounts may be obtained for lower cost.  *See, e.g.*, *Taylor*, 2009 WL 535779, at *10  (finding that the presence of a high concentration of mutual funds did not violate ERISA as a matter of law, despite expert evidence in support of the notion that "less-costly managed separate trust accounts outweigh the advantages of mutual funds"); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("[N]othing in ERISA requires [a] fiduciary to scour the market to find and offer the cheapest possible fund . . . .").

Courts addressing this issue recognize that the duty of prudence simply requires a fiduciary to "offer participants meaningful choices about how to invest their retirement savings." *Renfro*, 671 F.3d at 327; *Loomis*, 658 F.3d at 673–74.  The Amended Complaint establishes that

the Plan fiduciaries offered a broad range of investment options, with varying investment styles and fee levels. *Supra* at 3. Indeed, the materials plaintiff incorporates into his pleading make plain that the Plan fiduciaries consistently took steps to lower the Plan's investment management fees, moving the Plan into lower-cost share classes as they became available. *See, e.g.*, AC ¶ 103 n.10 (noting that the Plan transferred its investments in the MS Funds from I shares to IS shares in February 2014). Moreover, the Amended Complaint concedes that the Plan also offered eight institutional, separate accounts investments, AC ¶ 82, belying any inference that defendants' fiduciary process was blind to the relative benefits these products might have for certain investment strategies, AC ¶ 83. *See Loomis*, 658 F.3d at 671.

### C. Even If Plaintiff's Claims Were Plausibly Alleged, They Would Be Precluded By ERISA's Statute Of Limitations

Even if plaintiff were correct that his slim factual allegations sufficed to state a claim (he is not), his claims would be time-barred under ERISA's three-year statute of limitations. A fiduciary breach action must be commenced within "three years after the earliest date on which the plaintiff had actual knowledge of the breach." 29 U.S.C. § 1113(2). Through participant disclosures, plaintiff knew the facts on which his claims are based (including the MS Funds' inclusion in the Plan, their fees, and their structure as mutual funds) more than three years ago. *See, e.g.*, VerGow Decl., Ex. G (June 2012 Fee Disclosure), Ex. L (Aug. 2013 Fee Disclosure) (showing the MS Funds were mutual funds), Ex. C (2013 Form 5500). Plan participants are charged with knowledge of facts contained in plan communications, and it is now too late for plaintiff to assert claims based on those facts. *See, e.g.*, *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008) ("Any interpretation of the term 'actual knowledge' that would allow a participant to disregard information clearly provided to him/her would effectively

provide an end run around ERISA's limitations requirement."); *cf. Leber v. Citigroup 401(k)*

*Plan Inv. Comm.*, No. 07-CV-9329, 2014 WL 4851816, at *3 n.4 (S.D.N.Y. Sept. 20, 2014).[26]

### D.   Plaintiff's Prohibited Transaction Claims Must Be Dismissed

Finally, plaintiff contends that the Plan's inclusion of the MS Funds constituted

prohibited transactions under ERISA § 406(a)(1)(D) and § 406(b).  AC ¶¶ 209–14; *see* 29 U.S.C.

§ 1106(a)(1)(D) (prohibiting transactions transferring the assets of the plan to or for the benefit

of a party in interest); *id.* § 1106(b) (prohibiting various self-dealing transactions).  Plaintiff's

prohibited transaction claims are both time-barred and precluded by the prohibited transaction

exemption expressly permitting investments in affiliated mutual funds.

### 1.   *Plaintiff's Prohibited Transaction Claims Are Precluded By ERISA's Six-Year Statute Of Repose*

ERISA's statute of repose requires plaintiffs to file suit within six years of the date of the

prohibited transaction violation subject to challenge.  29 U.S.C. § 1113(1).  In a participant-

directed plan such as this one, the only "transaction" attributable to the fiduciaries (as opposed to

plan participants themselves) is the initial inclusion of the fund in the Plan lineup.  *See Wright v.*

*Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (explaining that the decision to

"continue to hold" a particular investment is "not a transaction" for § 406 purposes); *David v.*

*Alphin*, 704 F.3d 327, 340–41 (4th Cir. 2013) (the "only action that can support an alleged

prohibited transaction is the initial selection of the affiliated funds").  Courts have repeatedly

rejected attempts to avoid the repose bar by casting post-selection participant-driven investments

as "prohibited transactions" within the meaning of the statute.  *See David*, 704 F.3d at 341; *Leber*

---

[26] At a bare minimum, plaintiff's claims based on these known facts would have to be constrained to breaches allegedly occurring within the past three years.  And plaintiff would still have to point to distinct fiduciary breaches during that time—which, as discussed in the text, the Amended Complaint fails to do.

*v. Citigroup, Inc.*, No. 07-CV-9329, 2010 WL 935442, at *7 (S.D.N.Y. Mar. 16, 2010); *Figas v.*

*Wells Fargo & Co.*, No. 08-4546, 2010 WL 2943155, at *5 (D. Minn. Apr. 6, 2010).  Because

the decisions to include the MS Funds were made more than six years before plaintiff filed this

action, *see supra* note 9, plaintiff's prohibited transaction claims should be dismissed.[27]

    2.    *The Amended Complaint Establishes The Application Of Prohibited Transaction Exemption 77-3, Permitting The Offering Of Affiliated Mutual Funds*

The Department of Labor's Prohibited Transaction Exemption ("PTE") 77-3 provides

that ERISA § 406 permits the inclusion of affiliated mutual funds within a plan, provided several

criteria are met:

> First, the plan must pay no "investment management, investment advisory or similar fee" to the mutual fund, although the mutual fund itself may pay such fees to its managers; second, the plan must not pay "a redemption fee" when selling its shares; third, the plan must not pay a sales commission in connection with the sale or acquisition; and fourth, all other dealings between the plan and the affiliated fund must be "on a basis no less favorable to the plan than such dealings are with other shareholders."

*Leber*, 2010 WL 935442, at *10 (quoting PTE 77-3, 42 Fed. Reg. 18,734, 18,734–35 (1977)).

The Amended Complaint and incorporated documents make clear that the Plan pays no fees to

Morgan Stanley Investment Management ("MSIM"), manager of the MS Funds, beyond the

mutual funds' expense ratios.  *See, e.g.*, AC ¶ 66 ("Morgan Stanley charges *set fees* for providing

investment advisory services to those mutual funds.  Plan participants . . . cannot negotiate these

---

[27] Defendants acknowledge that another court in this district rejected a similar limitations argument in *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 CIV. 9936 (LGS), 2016 WL 5957307, at *5 (S.D.N.Y. Oct. 13, 2016), holding that every investment in the challenged funds amounted to a prohibited transaction.  Defendants respectfully submit that the *Moreno* decision is incorrect, and overlooks that post-selection investments in a fund are not fiduciary actions, as other courts have consistently recognized.  At most, these participant investments follow from fiduciary *in*-action—which is not a "transaction" within the plain meaning of that word.  *See David*, 704 F.3d at 340 ("[T]he word "transaction" implies that an affirmative action is required."); *Wright*, 360 F.3d at 1101 (similar).

fees." (emphasis added)); VerGow Decl., Ex. G (June 2012 Fee Disclosure) at 1–2. And for all

the funds, the Plan was invested in the lowest-fee share class available, on the same terms as and

according to the parameters set forth for all investors in the funds' prospectuses. AC ¶ 66;

*compare, e.g.*, VerGow Decl., Ex. H (Nov. 2013 Fee Disclosure) at 8–9 (noting total asset-based

fees of 1.05% for the Small Company Fund, 0.71% for the Mid-Cap Growth Fund, and 1.02%

for the Real Estate Fund), *with* Ex. F (MSIM 2013 N1-A Registration Statement) (showing four

share classes for the Small Company Fund with 1.05%, 1.30%, 1.30%, and 1.80% fees and four

share classes for the Real Estate Fund with 1.02%, 1.27%, 1.27%, and 1.77% fees), *and* Ex. M

(2013 Mid-Cap Growth Fund Summary Prospectus) (share classes with 0.71%, 0.96%, 0.96%,

and 1.46% fees). Indeed, the Plan's equal footing with other shareholders is central to plaintiff's

fee-related grievance—plaintiff complains that the MS Funds' advisor (who is not a fiduciary

under ERISA) did not *depart* from the generally applicable mutual fund fee structure, arguing

that it should have instead offered the MS Funds for the same fee charged for an entirely

different investment product. *See* AC ¶ 66; *see also* AC ¶¶ 78–80 (comparing terms applicable

to all mutual fund investors to those applicable to separate account investors); AC ¶ 82

(suggesting MSIM could have "voluntarily reduced the fees" that it generally collects from

mutual fund investors to equal its separate account fees). PTE 77-3 requires that the Plan receive

no less favorable treatment than all other investors in the mutual funds—and the Amended

Complaint establishes that it did.

Courts are divided on whether a plaintiff asserting a prohibited transaction violation must

plead the non-applicability of a prohibited transaction exemption.[28] Here, however, where

---

[28] *Compare, e.g.*, *Leber*, 2010 WL 935442, at *10 (dismissing complaint that did "not allege any basis for presuming that a defendant's conduct fell outside a statutory exemption"), *and Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510 (E.D. Pa. 2001) (same), *with Allen v. GreatBanc*

plaintiff's own allegations and the materials he relies upon *establish* the exemption, the Amended Complaint is subject to dismissal under ordinary *Iqbal*/*Twombly* pleading principles. *See Allen*, 835 F.3d at 677 (recognizing that *Iqbal*/*Twombly* pleading standards can be used to screen "frivolous" prohibited transaction claims).

## IV.    PLAINTIFF'S CHALLENGE TO THE OFFERING OF THE BLACKROCK FUNDS FAILS AS A MATTER OF LAW

Plaintiff also claims that defendants breached their fiduciary duties of prudence and loyalty by retaining a slate of target date collective trusts managed by BlackRock (the "BlackRock Funds").  *See* AC ¶¶ 140–75, 184–97, 223–30.  Specifically, plaintiff alleges that the BlackRock Funds were largely untested options when they were selected, and that during the class period most of them underperformed a Dow Jones target date index and a cheaper Vanguard-managed target date suite.  AC ¶¶ 140–75.  Plaintiff speculates that defendants selected the BlackRock Funds instead of the Vanguard alternatives because Morgan Stanley's brokerage business earns fees and commissions from BlackRock.  AC ¶¶ 140.  Once again, plaintiff's conclusory allegations are insufficient.

### A.    Plaintiff's Critique Of The BlackRock Funds' Performance Fails To State A Claim

As with the MS Funds, plaintiff's complaints about the BlackRock Funds amount to nothing more than an impermissible hindsight critique of their performance.  As explained *supra* at 13–14, an "allegation that an investment's price dropped, even precipitously, does not alone suffice to state a claim under ERISA."  *St. Vincent*, 712 F.3d at 721.  Rather, plaintiff must "allege[] facts that, if proved, would show that an adequate investigation would have revealed to

*Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016) ("[A]n ERISA plaintiff need not plead the absence of exemptions to prohibited transactions."), *and Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009) (explaining that PTE 77-3 is an affirmative defense which plaintiffs need not plead).

a reasonable fiduciary that the investment at issue was improvident." *Id.* at 718.  Plaintiff's claims fail on this deficiency alone.

Moreover, plaintiff's hindsight appraisal is once again misleading.[29]  Plaintiff simply ignores contemporaneous information available to the Plan fiduciaries during the class period, precluding any meaningful inferences about the fiduciaries' process during that time.  *See St. Vincent*, 712 F.3d at 716.  A review of the BlackRock Funds' performance tells a more nuanced picture.  Two of the challenged funds *outperformed* plaintiff's hand-picked index comparator over the class period.  *See* AC ¶¶ 165, 159 (the 2025 and 2040 BlackRock Funds).  Others lagged that index on an annualized basis by as little as 0.01%.  *See* AC ¶ 174 (the 2055 BlackRock Fund).  The 2012 participant disclosure reveals that *all* of the BlackRock Funds were beating their benchmarks since inception.  *See* VerGow Decl., Ex. G (June 2012 Fee Disclosure) at 4–5.  Midway through the class period, in 2013, four of the BlackRock Funds were outperforming their benchmarks (net of fees), one matched its benchmark, and the other two lagged their benchmarks only modestly.  *See* VerGow Decl., Ex. H (Nov. 2013 Fee Disclosure) at 8.  Plaintiff cannot plausibly maintain that a prudent fiduciary would have immediately removed the BlackRock Funds from the lineup based on this performance data.  On the contrary, ERISA's duty of prudence affords fiduciaries latitude to monitor plan investments over a period of years, even when those funds, unlike here, consistently underperform.  *See, e.g.*, *Jenkins*, 444

---

[29] Plaintiff also complains about the basis of the Plan fiduciaries' initial selection of the BlackRock Funds, alleging that some of them were "untested," AC ¶ 148, and that others had poor "historical performance indicators" based on predecessor mutual funds, AC ¶ 149.  As above, *supra* at 17–18, plaintiff's challenge to the fiduciaries' initial 2009 selection of the BlackRock Funds is untimely under ERISA's statute of repose, which permits plaintiff to challenge only breaches occurring within six years of the filing of this action.

F.3d at 926 (defendant did not breach fiduciary duties by retaining mutual funds over a period of poor performance).[30]

Moreover, as plaintiff admits, defendants eventually removed the BlackRock Funds from the Plan in February 2016, *see* AC ¶ 156, 159, 162, 165, 168, 171, 174, suggesting an attentive process, not a negligent one,  *see, e.g.*, *White*, 2016 WL 4502808, at *17 (noting that the eventual removal of the fund "create[d] a plausible inference that the Plan fiduciaries were attentively monitoring the fund").

### B.    Plaintiff's Fee Challenge Lacks Merit

Plaintiff's challenges to the BlackRock Funds' fees are equally deficient.  Plaintiff alleges that the Blackrock Funds' fees (12 basis points) were excessive because Vanguard offered an allegedly similar product line for less (7 basis points).  AC ¶ 151.[31]  It is well-established that a plaintiff does not plausibly plead an excessive fee claim by pointing to a cheaper offering on the market: "nothing in ERISA requires [a] fiduciary to scour the market to find and offer the cheapest possible fund."  *Hecker*, 556 F.3d at 586; *St. Vincent*, 712 F.3d at 718 (same).  Plaintiff's comparison of the BlackRock Funds' fees to Vanguard is particularly unilluminating, because Vanguard is well known to be an especially low-cost provider.  *See, e.g.*, *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345 (2d Cir. 2006) (noting, in

---

[30] It is no answer to say the BlackRock Funds underperformed a single peer fund group, Vanguard, over the class period.  Again, as the Second Circuit has recognized, a plaintiff does not plausibly allege imprudence by "show[ing] that better investment opportunities were available at the time of the relevant decisions."  *St. Vincent*, 712 F.3d at 718.  Moreover, plaintiff's critique overlooks material differences among even passive target-date funds, which vary in their glide paths and landing points—differences that may reasonably weigh into the fiduciary's choice of fund suite.  *See, e.g.*, *Loomis*, 658 F.3d at 673–74.

[31] The Amended Complaint alleges that the BlackRock Funds' fees were 12.9 basis points, but disclosures provided to plaintiff, which he has incorporated into his pleading, AC ¶ 5, reveal that the fees were in fact 12 basis points.  *See, e.g.*, VerGow Decl., Ex. G (June 2012 Fee Disclosure) at 4–5, Ex. H (Nov. 2013 Fee Disclosure) at 8.

affirming dismissal of fee challenge under the Investment Company Act of 1940, that the fact

that "a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on

keeping costs low, raises little suspicion").[32]  Plaintiff alleges no facts permitting the inference

that the BlackRock Funds' fees were "excessive relative to the services rendered," *Young v. Gen.

Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (quotations and citations omitted),

and accordingly offers no basis for concluding that the fiduciaries' process in accepting the

BlackRock Funds' fees was suspect.

### C.    There Is No Substance To Plaintiff's Disloyalty Theory

Finally, plaintiff's theory that Plan fiduciaries were motivated to select and retain the

BlackRock Funds to further a business relationship is pure invention.  Plaintiff does not allege

that the Plan fiduciaries were *aware* of any business relationship with BlackRock, much less

facts showing that the fiduciaries were motivated by such a relationship to retain the BlackRock

Funds over market alternatives.  There is, of course, an "obvious alternative explanation" for the

retention of the BlackRock Funds, *see Iqbal*, 556 U.S. at 682: BlackRock's strong reputation and

enormous popularity with investors generally, its reasonable fees, and the demonstrated solid

performance of the BlackRock Funds specifically over the class period.  *See, e.g.*, VerGow

Decl., Ex. N (2010 BlackRock 10-K) at 43 (reflecting that BlackRock was the world's "largest

publicly traded investment management firm" with $3.561 trillion in assets under management at

---

[32] The Amended Complaint relies on Morningstar coverage of the BlackRock Funds' mutual
fund analogues to argue that the BlackRock Funds were inferior options.  AC ¶ 147.  In fact, that
coverage shows that the BlackRock Funds' fees were far below the Morningstar category
average and peer group median during the class period.  *See, e.g.*, Morningstar, BlackRock
LifePath Index 2055 Fund Institutional Shares – Expense, available at
http://financials.morningstar.com/fund/expense.html?t=LIVIX&region=usa&culture=en-US
(reporting that the BlackRock LifePath Index 2055 Fund Institutional Shares had an expense
ratio of 20 basis points in 2013, well below the category average of 42 basis points and
comparison group median of 81 basis points) (last visited Feb. 9, 2017).

the beginning of the class period); *id.* at 7 (reflecting that BlackRock's target date funds experienced net inflows of $7.5 billion and portfolio appreciation of $4.5 billion in 2010); *see also Iqbal*, 556 U.S. at 680 (noting that conduct does not give rise to a plausible claim when it is "not only compatible with, but indeed more likely explained by, lawful . . . behavior").[33]

Plaintiff's theory that any business relationship between two leading financial firms gives rise to an inference of conflicted conduct would impose extraordinary limitations on a company's ability to select the highest-quality investment options for its plan. Indeed, this theory, if accepted, would likely preclude Morgan Stanley from selecting funds from T. Rowe Price and Vanguard, which Plaintiff touts as preferred alternatives, as they are Morgan Stanley's third- and fourth-largest shareholders, respectively.[34]

## V.    PLAINTIFF'S MONITORING CLAIM FALLS WITH PLAINTIFF'S FAILURE TO PLAUSIBLY ALLEGE ANY UNDERLYING BREACH

Finally, plaintiff alleges that the appointing fiduciaries failed to prudently carry out their monitoring duties. AC ¶¶ 231–39.[35] This derivative claim falls apart with plaintiff's failure to plausibly allege any underlying breach by the Committee, and must be dismissed. *See, e.g.,*

---

[33] The Amended Complaint purports to challenge the selection of the BlackRock Funds. *See, e.g.*, AC ¶ 152. Since these funds, like the MS Funds, were selected outside the six-year statute of repose period, *see* AC ¶ 146, plaintiff's claims must be construed as only a challenge to the fiduciaries' decision to retain the BlackRock Funds during the repose period. *See supra* note 9. Plaintiff's claims respecting the BlackRock Funds are also precluded by ERISA's three-year statute of limitations, for the reasons discussed *supra* at 16–17.

[34] *See* Nasdaq, Morgan Stanley Institutional Ownership, available at http://www.nasdaq.com/symbol/ms/institutional-holdings (collecting SEC Form 13-F institutional holdings disclosures) (last visited Feb. 9, 2017).

[35] In the body of Count VI, the Amended Complaint asserts that the MS Board Members held this appointment and removal authority. AC ¶¶ 232–34. As discussed above, this erroneous allegation is contradicted by other allegations in the Amended Complaint and by the Plan Document. *Supra* at 7–8. The Count should be dismissed for that reason alone, and for the other reasons discussed in the text.

*Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013) ("Plaintiffs cannot maintain a claim for breach of the duty to monitor by the Director Defendants absent an underlying breach of the duties imposed under ERISA by the Benefit Committee Defendants."), *vac'd on other grounds*, 134 S. Ct. 2900 (2014), *and reaffirmed by Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016).

Even if plaintiff's other claims survive, plaintiff fails to allege, as he must, that the monitoring fiduciaries—MS&Co and MSDHI—failed to "review the performance of [their] appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards."  *See, e.g.*, *In re Calpine Corp. ERISA Litig.*, No. C-03-1685-SBA, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005) (claim dismissed in the absence of such allegations); *see also* 29 C.F.R. § 2509.75-8, FR-17.  Indeed, plaintiff alleges no facts at all about the monitoring fiduciaries' process or its supposed deficiencies, asking the Court instead to infer their imprudence from the performance of the challenged funds.  *See, e.g.*, AC ¶ 237a (alleging that the monitoring fiduciaries "st[ood] idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plan").  Alleged underperformance does not, without more, permit an inference of imprudent process even as to fiduciaries with responsibility for selecting plan investment options.  *St. Vincent*, 712 F.3d at 721.  It certainly does not suffice to support a claim of imprudence against the fiduciaries who monitor those investment fiduciaries.

## CONCLUSION

For the reasons stated, defendants respectfully request that this Court dismiss the Amended Complaint.

Dated: February 9, 2017
       Washington, DC

Respectfully submitted,

/s/ Meaghan VerGow
Brian D. Boyle, *admitted pro hac vice*
Shannon M. Barrett, *admitted pro hac vice*
Meaghan VerGow, *admitted pro hac vice*
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
bboyle@omm.com
sbarrett@omm.com
mvergow@omm.com

Pamela A. Miller
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pmiller@omm.com

*Attorneys for Defendants*