# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ROBERT J. PATTERSON, RALPH COLO, and TERRI LO SASSO individually and as representatives of a class of similarly situated persons of the Morgan Stanley Retirement Plan,

Plaintiffs,

-- against --

No. 1:16-cv-06568-RJS

MORGAN STANLEY, Morgan Stanley Domestic Holdings, Inc., Morgan Stanley & Co., LLC, Morgan Stanley Retirement Plan Investment Committee, and John Does 1–30,

Defendants.

---

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6)

# TABLE OF CONTENTS

I.   The Relevant Legal Standard on Defendants' Rule 12(b)(6) Motion.................................2

II.  Plaintiffs Have Standing to Challenge Each of the Funds at Issue......................................3

    A.   Plaintiffs Have Standing to Recover All Plan Losses Under
        29 U.S.C. § 1132(a)(2)...........................................................................................................3

    B.   Plaintiffs Have Class Standing to Sue On Behalf of Participants Who Invested
        in Funds That Plaintiffs Did Not Hold...............................................................................5

III. Morgan Stanley Allegedly Breached ERISA's Interrelated Fiduciary Duties ..................6

    A.   Plaintiffs State a Claim that Morgan Stanley Breached Its Fiduciary Duties by
        Offering Six Proprietary Funds with High Fees and Poor Track Records ..........7

        1. Disloyalty: Defendants Offered the Proprietary Funds to Reap
           Undue Fees.......................................................................................................................7

        2. Imprudence: Plaintiffs' Claims Are Not Based on Hindsight .....................12

    B.   Plaintiffs Adequately Allege that Morgan Stanley Breached Its Fiduciary
        Duties by Retaining the BlackRock Trusts.......................................................................15

        1. Disloyalty: Plaintiffs Plausibly Allege Morgan Stanley Put Profits
           Ahead of Participants by Retaining the BlackRock Trusts..........................15

        2.  Imprudence: The BlackRock Trusts Were Imprudent Investments..............16

IV.  Plaintiffs State Prohibited Transactions Claims and Need Not Plead Around
     PTE 77-3 ...........................................................................................................................................19

V.   Plaintiffs' Claims Are Not Barred by The Statute of Limitations, and in Any Event, the
     Court Cannot Determine as Much in the Posture of the Present Motion to Dismiss.........21

    A.   Plaintiffs' ERISA Claims Are Not Precluded by the
        "Actual Knowledge Rule" ...................................................................................................22

    B.   The Prohibited Transactions Claims Are Not Time-Barred ..............................24

VI.  Plaintiffs State a Valid Monitoring Claims (Count VI) ....................................................25

     CONCLUSION.......................................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Abraha v. Colonial Parking, Inc.*, 243 F. Supp. 3d 179 (D.D.C. 2017) ................................. 20, 21

*Allen v. Bank of Am. Corp.*, No. 15 Civ. 4285, 2016 WL 4446373
    (S.D.N.Y. Aug. 23, 2016) ........................................................................................................ 4

*Allen v. GreatBanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016) ........................................................ 3, 20

*Amgen v. Harris*, 136 S.Ct. 758 (2016) ........................................................................................... 12

*Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338 (2d Cir. 2006) ................................. 18

*Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728 (7th Cir. 2006) ................................... 12, 13

*Bedrick ex rel. Humrickhouse v. Travelers Ins. Co.*, 93 F.3d 149
    (4th Cir. 1996) ................................................................................................................... 2, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................ 2

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ........................................................................................... 5

*Bona v. Barasch*, No. 01 Civ. 2289, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) ................ 22, 24

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ............................................... *passim*

*Brown v. Am. Life Holdings*, 190 F.3d 856 (8th Cir. 1999) ............................................................ 23

*Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564 (6th Cir. 2010) ................................. 24

*Caltagirone v. NY Cmty. Bancorp, Inc.*, 257 F. App'x. 470 (2d Cir. 2007) .................................... 4

*Caputo v. Pfizer*, 267 F.3d 181 (2d Cir. 2001) .......................................................................... 2, 22

*Chao v. Merino*, 452 F.3d 174 (2d Cir. 2006) ................................................................................. 7

*Cryer v. Franklin Templeton Resources, Inc.*, No. C 16-4265, 2017 WL 818788
    (N.D. Cal. Jan. 17, 2017) ............................................................................................. 1, 5, 7, 9

*Donovan v. Bierwith*, 680 F.2d 263 (2d Cir. 1982) .............................................................. 1, 6, 7, 11

*Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337-Civ., 2007 WL 2263892
    (S.D. Fla. Aug. 7, 2007) ........................................................................................................ 8

*Fish v. Greatbanc Trust*, 749 F.3d 671 (7th Cir. 2014) .......................................................... 23, 24

*Fletcher v. Convergex Grp., LLC*, 679 F. App'x. 19 (2d Cir. 2017) ................................................ 4

*George v. Kraft Foods Global, Inc.*, 814 F. Supp. 2d 832 (N.D. Ill. 2011) .................................... 24

*Gipson v. Wells Fargo & Co.*, Civ. No 08-4546, 2009 WL 702004
    (D. Minn. Mar. 12, 2009) ............................................................................................... 18, 21

*Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169
    (D. Mass. 2012) .................................................................................................................... 5

*Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618 (D.N.J. 2010) .................................................... 20

*Gomez v. Toledo*, 446 U.S. 635 (1980) ......................................................................................... 20

*Gratz v. Bollinger*, 539 U.S. 244 (2003) ......................................................................................... 5

*Hamby v. Morgan Asset Mgmt.*, 692 F. Supp. 2d 944 (W.D. Tenn. 2010) ................................... 21

*Harris v. Amgen, Inc.*, 788 F.3d 916 (9th Cir. 2015) ..................................................................... 20

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) .................................................................... 9

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) ................................................... 8

*In re UBS Erisa Litig.,* No. 08-CV-6696, 2014 WL 4812387
(S.D.N.Y. Sept. 29, 2014) ................................................................................................. 4

*Jenkins v. Yager*, 444 F.3d 916 (7th Cir. 2006) .................................................. 12, 13

*Jones v. Bock*, 549 U.S. 199 (2007) ................................................................................ 20

*Jones v. Harris Assocs. L.P.*, 559 U.S. 335 (2010) .................................................. 11, 19

*Katsaros v. Cody*, 568 F. Supp. 360 (E.D.N.Y. 1983) .............................................. 22

*Kendall v. Emps. Ret. Plan of Avon Prods.,* 561 F.3d 112 (2d Cir. 2009) ................... 5

*Kross v. W. Elec. Co., Inc.*, 701 F.2d 1238 (7th Cir. 1983) ......................................... 3

*Krueger v. Ameriprise Fin., Inc.*, No. 11 Civ. 2781, 2012 WL 5873825
(D. Minn. Nov. 20, 2012) ........................................................................................ *passim*

*Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559 (D. Minn. 2014) ........................ *passim*

*Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470 (M.D.N.C. 2015) ....................... 9

*LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008) ......................................... 3

*Leber v. Citigroup, Inc.,* No. 07 Civ. 9329, 2010 WL 935442
(S.D.N.Y. Mar. 16, 2010) ................................................................................................ 21

*Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-CV-9329, 2014 WL 4851816
(S.D.N.Y. Sept. 30, 2014) ...................................................................................... 22, 23, 24

*Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-CV-9329, 2017 WL 5664850
(S.D.N.Y. Nov. 27, 2017) ........................................................................................... 4, 6, 7

*Long Island Head Start Child Development Services, Inc. v.*
*Economic Opportunity Commission of Nassau County, Inc.*, 710 F.3d 57
(2d Cir. 2013) ............................................................................................................. 1, 4

*Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011) ........................................... 9, 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160
(2d Cir. 2015) .................................................................................................................... 3

*Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209 (2d Cir. 1987) ........................ 19, 20

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) ........................................... 3

*McDonald v. Jones,* No. 4:16 CV 1346, 2017 WL 372101 (E.D. Mo. Jan. 26, 2017) .............. 1, 5

*Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502 (E.D. Pa. 2001) ...................... 20, 21

*Meiners v. Wells Fargo & Co.*, No. 16-3981, 2017 WL 2303968
(D. Minn. May 25, 2017) ................................................................................................ 18

*Merriam v. Demoulas*, No. 11-CV-10577, 2013 WL 2422789 (D. Mass. June 3, 2013) .............. 3

*Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936, 2016 WL 5957307
(S.D.N.Y. Oct. 13, 2016) ......................................................................................... *passim*

*Morin v. Essentia Health*, No. 16-CV-4397, 2017 WL 4083133
(D. Minn. Sept. 14, 2017) ............................................................................................. 25

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145
(2d Cir. 2012) ............................................................................................................ 2, 3, 5

*Pegram v. Herdrich*, 530 U.S. 211 (2000) ...................................................................... 6

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705
(2d Cir. 2013)................................................................................................*passim*

*Perez v. Chimes D.C., Inc.*, No. CV RDB-15-3315, 2016 WL 5815443
(D. Md. Oct. 5, 2016) .................................................................................. 25

*Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314 (N.D. Ga. 2017) .................... 9, 11, 13, 17, 18

*Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011) ............................................... 9

*Rosen v. Brookhaven*, 194 F. Supp. 2d 224 (S.D.N.Y. 2002) ................................ 20

*Schultz v. Stoner*, 308 F. Supp. 2d 289 (S.D.N.Y. 2004) ..................................... 23

*Tatum v. RJR Pension Inv. Comm.,* 761 F.3d 346 (4th Cir. 2014) ........................... 8

*Taveras v. UBS AG*, 612 F. App'x. 27 (2d Cir. 2015) ............................................ 4

*Taylor v. United Techs. Corp.*, No. 3:06CV1494, 2008 WL 2333120
(D. Conn. June 3, 2008)................................................................................. 5

*Taylor v. United Techs. Corp.*, No. 3:06CV1494, 2009 WL 535779
(D. Conn. Mar. 3, 2009)................................................................................. 9

*Terraza v. Safeway Inc.,* 241 F. Supp. 3d 1057 (N.D. Cal. 2017) .......................... 1, 13

*Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013) .......................................... 9

*Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015) ................................................ passim

*Tibble v. Edison Int'l*, 843 F.3d 1187 (9th Cir. 2016) ......................................... 18

*Toussaint v. JJ Weiser & Co.*, No. 04 Civ. 2592, 2005 WL 356834
(S.D.N.Y. Feb. 13, 2005)............................................................................ 22, 23

*Tussey v. ABB, Inc.*, No. 06-04305-cv, 2007 WL 4289694
(W.D. Mo. Dec. 3, 2007) ............................................................................. 5

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ........................................... 9, 10

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) .......................................... 10

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461
(S.D.N.Y. 2014).......................................................................................... 20

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV 15-1614, 2016 WL 4507117
(C.D. Cal. Aug. 5, 2016) ..................................................................... 5, 10, 12, 16, 25

*Wallace Wood Props. LLC v. Wood*, 669 F. App'x. 33 (2d Cir. 2016)....................... 22

*Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902 (W.D. Mo. 2017)...................*passim*

*Wright v. Heyne*, 349 F.3d 321 (6th Cir. 2003) ................................................ 24

*Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 Fed. App'x. 31 (2d Cir. 2009) ............ 18, 19

## Statutes

29 U.S.C. § 1103.......................................................................................... 19

29 U.S.C. § 1104................................................................................ 1, 6, 7, 8, 19

29 U.S.C. § 1106................................................................................... 1, 2, 19

29 U.S.C. § 1108............................................................................ 2, 19, 20, 21

29 U.S.C. § 1109................................................................................... 3

29 U.S.C. § 1113.......................................................................................... 22

29 U.S.C. § 1132 ................................................................................................................... 3, 4, 5

**Other Authorities**

42 Fed. Reg. 18,734 ................................................................................................................... 2, 8
Restatement (Third) of Trusts § 90 (Am. Law Inst. 2007) ........................................................... 14

**Rules**

Fed. R. Civ. P. 8(c) ..................................................................................................................... 20

This case involves self-dealing by a financial services giant at the expense of its employees. Plaintiffs allege that Morgan Stanley violated its sacred duties under ERISA by failing to act with an "eye single" towards the interests of Plan participants. *Donovan v. Bierwith*, 680 F.2d 263, 271-72 & n.8 (2d Cir. 1982). Instead, it used the firm's 401(k) Plan as a vehicle for its own profit.

Morgan Stanley ("Defendants") had total authority to select investment options for the Plan. It abused that authority by: (1) selecting its own mutual funds ("proprietary funds") as the *sole option* for several investment strategies and charging participants undue fees on those funds; and (2) offering certain BlackRock Trusts (which were also the sole option for their respective investment strategies) while receiving substantial payments from BlackRock. The funds had high fees and a history of poor performance. But, driven by self-interest, Defendants kept them in the Plan. In so doing, Defendants breached ERISA's duties of loyalty and prudence, 29 U.S.C. § 1104 (a)(1)(A, B), and engaged in prohibited transactions. 29 U.S.C. § 1106. Courts have regularly declined to dismiss similar self-dealing and loyalty claims.[1]

Each of Defendants' arguments for dismissal fails. For example:

• In general, Defendants seek to transmogrify their motion into summary judgment, relying heavily on evidence and factual assertions outside of the pleadings. But this is a motion to dismiss. The Court must disregard Defendants' factual claims and accept Plaintiffs' allegations as true.

• *Standing*: Plaintiffs sue *on behalf of the Plan*, and therefore have standing to challenge Defendants' actions regarding funds in which they did not invest. *Long Island Head Start Child Development Services, Inc. v. Economic Opportunity Com'n of Nassau Cty., Inc.*, 710 F.3d 57, 67 n.5 (2d Cir. 2013). Plaintiffs also have "class standing" to bring the full breadth of the claims.

---

[1] *E.g. Moreno v. Deutsche Bank Ams. Holding Corp.,* No. 15 CIV. 9936, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016) ("excessively costly proprietary mutual funds"); *Wildman v. Am. Century* Servs., LLC, 237 F. Supp. 3d 902, 913-14 (W.D. Mo. 2017) (same) ; *McDonald v. Jones*, No. 4:16 CV 1346, 2017 WL 372101, at *2 (E.D. Mo. Jan. 26, 2017) (same); *Cryer v. Franklin Templeton Res., Inc.*, No. C 16-4265, 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) (same); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1071 (N.D. Cal. 2017) (enabling self-dealing by plan trustee).

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 162 (2d Cir. 2012).

• *"Hindsight"*: Defendants' insist Plaintiffs claims are mere "hindsight." But Plaintiffs do not merely claim the funds "*turn[ed] out to have been, in hindsight*, a bad investment." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 721 (2d Cir. 2013). Instead, they allege that the funds were bad – and tainted by self-dealing – *all along*. Moreover, Plaintiffs allege numerous facts "combined with" poor performance that raise an inference of imprudence. *See id.*

• *Other Choices*: Defendants persist in arguing that the challenged funds were a minority of the Plan options. Being only *partly* self-interested is no defense. "ERISA commands undivided loyalty to the plan participants." *Bedrick ex rel. Humrickhouse v. Travelers Ins. Co.,* 93 F.3d 149, 154 (4th Cir. 1996). Offering an array of options does not suffice. *See Krueger v. Ameriprise Fin., Inc*., No. 11–cv–02781, 2012 WL 5873825, at *13-14 (D. Minn. Nov. 20, 2012). Defendants had a duty to monitor the Plan and remove *each* bad option. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015).

• *Statute of Limitations*: Defendants cannot rely on ERISA's shortened three-year limitations period because Plaintiffs did not have "actual knowledge" of "all material facts" necessary to understand that Defendants violated ERISA. *Caputo v. Pfizer*, 267 F.3d 181, 193 (2d Cir. 2001). Further, Defendants' argument that Plaintiffs' prohibited transaction claims fall outside the default six-year period merely because the funds were added to the Plan more than six years ago is contrary to *Tibble* and *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936, 2016 WL 5957307, at *5 (S.D.N.Y. Oct. 13, 2016).

• *PTE 77*-3: The exemption "does not relieve" fiduciaries from ERISA's "general fiduciary responsibility provisions." 42 Fed. Reg. 18,734. On the § 1106 claim, the SAC does not establish the exemption: Defendants allegedly charged unreasonable fees, 29 U.S.C. § 1108(b)(8)(B), and failed to offer the lowest cost category available for each investment. 42 Fed. Reg. at 18,735.

## I.      The Relevant Legal Standard on Defendants' Rule 12(b)(6) Motion

A complaint provides "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs need only plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. A court must take a complaint "as

a whole," "accepting all factual allegations . . . as true and drawing all reasonable inferences in Plaintiffs' favor." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169, 172 (2d Cir. 2015). ERISA is a "remedial statute to be liberally construed in favor of employee … participants." *Kross v. W. Elec. Co., Inc.*, 701 F.2d 1238, 1242 (7th Cir. 1983). Because employees "generally lack the inside information necessary to make out their claims in detail," "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).

## II.   Plaintiffs Have Standing to Challenge Each of the Funds at Issue

Defendants contend that Plaintiffs can only sue for funds they invested in. But, under 29 U.S.C.§ 1132(a)(2), Plaintiffs may sue on behalf of the Plan. Further, the "class standing" doctrine permits Plaintiffs to seek relief for investors in other funds. *NECA-IBEW*, 693 F.3d at 162.

### A.   Plaintiffs Have Standing to Recover All Plan Losses Under 29 U.S.C. § 1132(a)(2)

ERISA specifically authorizes participants to sue for breach of fiduciary duty on behalf of the Plan. 29 U.S.C. § 1132(a)(2). Plaintiffs act as representatives of *the Plan* and stand in for all participants. *Id*; *see also* 29 U.S.C. § 1109(a) (fiduciary liable "to make good to [the] plan any losses to the plan"); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 & 142 n.9 (1985).[2]

---

[2] *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008) does not imply that "Plaintiff... cannot maintain claims respecting funds she never personally chose." (Defs' Mot. to Dismiss ("Mot"), ECF No. 93 at 5). Prior to *LaRue*, it was established that participants could sue under § 1132(a)(2) for losses suffered by the Plan. 552 U.S. at 255 (discussing *Russell*). *LaRue* simply clarified that participants may *also* sue under § 1132(a)(2) for impairment to their individual accounts. *Id*. at 256; *see also id.* at 261 (Thomas, J., concurring) ("On their face, §§ [1109(a)] and [1132(a)(2)] permit recovery of *all* plan losses caused by a fiduciary breach."); *Merriam v. Demoulas*, No. 11-CV-10577, 2013 WL 2422789, at *8-10 (D. Mass. June 3, 2013) (rejecting argument "that plaintiffs can only sue for the losses to their individual accounts… not the total loss suffered by the entire Plan").

In this Circuit, a plaintiff bringing a derivative suit under § 1132(a)(2) need not allege an individualized injury. In *Head Start*, the Second Circuit held that the plaintiffs had "injury-in-fact sufficient for constitutional standing" because they "asserted their claims in a derivative capacity, to recover for injuries to the plan." 710 F.3d at 67 n.5.[3] Plaintiffs go above and beyond *Head Start*. Not only do they allege injuries to the Plan, but also to their individual accounts. The losses Plaintiffs suffered resulted from the same self-interested and allegedly unlawful course of conduct that harmed investors in any of the proprietary funds or BlackRock Trusts at issue.[4] Moreover, Plaintiffs allege that Defendants' ERISA violations "undermined the Plan as a whole," and deprived all participants "the right to choose from superior investment options." *E.g.* SAC ¶ 65; *see also id.* ¶¶ 1, 30, 66-68. Accordingly, "[t]he fact that only some of the[] alleged losses [to the Plan] manifested themselves in the named plaintiffs' individual accounts does not deprive plaintiffs of their standing to seek redress on behalf of the Plan for the broader injuries the Plan incurred." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-CV-9329, 2017 WL 5664850, at *8 (S.D.N.Y. Nov. 27, 2017) (collecting cases).[5] Courts throughout the country concur.[6]

---

[3] *Accord Fletcher v. Convergex Grp., LLC*, 679 F. App'x. 19, 21 (2d Cir. 2017) (citing *Head Start*); *Allen v. Bank of Am. Corp.*, No. 15 Civ. 4285, 2016 WL 4446373, at *5 (S.D.N.Y. Aug. 23, 2016) ("The Second Circuit's holding in *Head Start* is neither ambiguous nor dictum… participants have constitutional standing to sue in a derivative capacity for injuries to a Plan.").

[4] E.g. SAC ¶¶ 69-71, 98, 118, 134, 148, (describing Defendants' incentives to invest in proprietary funds), ¶¶ 72-91 (describing the unreasonably high fees of such Funds), ¶¶ 92-97, 101-149 (summarizing common trends of underperformance among proprietary funds, including relative to comparator funds and benchmarks), ¶¶ 150-153 (describing Defendants' incentives to invest in BlackRock Trusts), ¶¶ 154-164 (describing the history and structure of each BlackRock fund).

[5] Plaintiffs in the cases Defendants cite failed to allege *any* individual injuries. *See Taveras v. UBS AG*, 612 F. App'x. 27, 29 (2d Cir. 2015) ("Failure to allege individualized harm…"); *In re UBS Erisa Litig.*, No. 08-CV-6696, 2014 WL 4812387, at *7 (S.D.N.Y. Sept. 29, 2014) (same); *Caltagirone v. NY Cmty. Bancorp, Inc.*, 257 F. App'x. 470, 473 (2d Cir. 2007) (noting that one plaintiff withdrew from the plan prior to the Class Period and the other never "enrolled or participated in an ERISA plan administered by the [ ] defendants."). Moreover, *Taveras* relies on

4

**B. Plaintiffs Have Class Standing to Sue On Behalf of Participants Who Invested in Funds That Plaintiffs Did Not Hold**

In addition to Plaintiffs' right to bring claims on behalf of the Plan under §1132(a)(2), Plaintiffs also have "class standing" to represent participants who invested in other funds. "A plaintiff has class standing if he plausibly alleges (1) 'that he personally has suffered some actual… injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates the 'same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW*, 693 F.3d at 162 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) and *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)).

Here, there is no dispute that Plaintiffs have pled actual individual injury based on owning proprietary and BlackRock funds. *E.g.* SAC ¶¶27-29. Moreover, Plaintiffs allege, Defendants

---

*Kendall v. Emps. Ret. Plan of Avon Prods.,* 561 F.3d 112, 118-120 (2d Cir. 2009), which concerned claims under 29 U.S.C. § 1132(a)(3)—not claims brought *on behalf of the Plan* under § 1132(a)(2).

[6] *E.g. Braden*, 588 F.3d at 593 ("[A] plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury"); *Cryer*, 2017 WL 4023149, at *4 ("[I]n determining constitutional standing, courts look not to individual funds but to the nature of the claims and allegations to determine whether the pleaded injury relates to the defendant's management of the Plan as a whole.") (citation omitted); *McDonald*, 2017 WL 372101, at *2 ("[A] plan participant may seek recovery for the plan even where the participant did not personally invest in every one of the funds that caused an injury to the plan."); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV 15-1614, 2016 WL 4507117 (C.D. Cal. Aug. 5, 2016), at *4 (holding that plaintiffs have standing to sue for losses to funds they did not invest in where claims arose from common, self-interested practice in selecting proprietary funds); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 (D. Minn. 2014); *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012) ("Plaintiff has established constitutional standing with respect to the 257 funds that it did not purchase."); *Taylor v. United Techs. Corp.*, No. 3:06CV1494, 2008 WL 2333120, at *3 (D. Conn. June 3, 2008) ("[T]he loss to the Plan assets due to excessive fees or impaired returns represents a concrete and actual injury to satisfy standing."); *Tussey v. ABB, Inc.*, No. 06-04305-cv, 2007 WL 4289694, at *2 (W.D. Mo. Dec. 3, 2007) ("Defendants' argument that [Plaintiff] cannot advance any claims for investment options which he never elected is not persuasive because the losses occurred to the Plan as a whole.").

selected and retained each of the proprietary and BlackRock funds pursuant to a disloyal and imprudent investment process that benefitted Defendants at the expense of participants. Plaintiffs and all class members were therefore subjected to similar injuries: higher fees, lower returns, and an inferior plan as a whole. Accordingly, "[b]ecause the alleged harms are premised on the process Defendants used to manage the Plan, the claims involve similar inquiries and proof, and thus implicate the same set of concerns." *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936, 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017) (finding class standing where Plaintiffs alleged they "were charged excessive fees and were offered an unlawful menu of investments, assembled for the benefit of Defendant.").[7] Morgan Stanley ultimately tries to sidestep this point by arguing that Plaintiffs' allegations of underperformance vary by fund. (Mot. at 6). But Plaintiffs, in fact, allege the funds suffer uniform infirmities. *See* n.4, *supra*. Moreover, since Plaintiffs allege that disloyalty and imprudence tainted Defendants' investment *process*, differences in fund performance do not defeat class standing. *Leber*, 2017 WL 5664850, at *10.

## III.   Morgan Stanley Allegedly Breached ERISA's Interrelated Fiduciary Duties

ERISA imposes "the highest [duties] known to the law." *Bierwirth*, 680 F.2d at 272 n.8. Under the duty of loyalty, 29 U.S.C. § 1104(a)(1)(A), plan fiduciaries must act "solely in the interest of participants" "for the exclusive purpose of providing benefits to participants... and defraying reasonable expenses of administering the plan." This "most fundamental duty," *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000), requires fiduciaries to make all decisions "with an eye single to the interests of the participants and beneficiaries." *Bierwirth*, 680 F.2d at 271. ERISA's duty of prudence, § 1104(a)(1)(B), commands fiduciaries to act "with the care, skill, prudence, and

---

[7] *See Leber*, 2017 WL 5664850, at *9 (class standing where "Plaintiffs allege that they and all other Plan participants who invested in the Affiliated Funds were injured in the same manner when defendants failed to monitor the Plan or to investigate alternatives . . . and [Defendants'] behavior was motivated by their divided loyalties and improper preference for [affiliated] funds.")

diligence" of a prudent person "acting in a like capacity and familiar with such matters." Prudence "is measured according to the objective prudent person standard developed in the common law of trusts." *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006). "Under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones." *Tibble*, 135 S. Ct. at 1828. Loyalty and prudence are "interrelated and overlapping" duties. *Leber*, 2017 WL 5664850, at *9. *Accord Bierwirth*, 680 F.2d at 271. Thus, allegations of disloyalty and imprudence must be viewed "as a whole," to determine whether they raise a plausible inference that fiduciary decisions were "tainted by failure of effort, competence, or loyalty." *Braden*, 588 F.3d at 596.

### A. Plaintiffs State a Claim that Morgan Stanley Breached Its Fiduciary Duties by Offering Six Proprietary Funds with High Fees and Poor Track Records

Plaintiffs allege Morgan Stanley breached these duties, and used the Plan as a vehicle for profit, by offering Plan participants six proprietary funds as the exclusive funds available in their investment strategies. (*E.g.* ¶¶ 69-149). Specifically, Morgan Stanley breached its duty of loyalty with regard to all six funds by charging employee-participants higher fees for the *same services* provided to outside clients. (*E.g.* SAC ¶¶ 72-91). Morgan Stanley also breached its duties of loyalty and prudence by retaining three of the proprietary funds (Small Company Fund, Mid-Cap Fund, and Real Estate Fund) despite their consistently deficient performance. (*Id.* ¶¶ 92-149).

#### 1. Disloyalty: Defendants Offered the Proprietary Funds to Reap Undue Fees

Morgan Stanley misses the mark by arguing—*in the abstract*—that there is nothing "inherently disloyal" about a financial services firm offering proprietary funds. (Mot. at 7). Plaintiffs allege Morgan Stanley offered such funds *under circumstances evincing disloyalty* (and imprudence): namely, charging undue fees and retaining poorly-performing funds. (*E.g.* ¶¶ 72-149). *See Cryer v. Franklin Templeton Res., Inc.,* No. C 16-4265, 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) (rejecting defendant's argument that "ERISA expressly permits a financial

services organization to offer proprietary" funds, in light of plaintiff's allegations).

The law is clear: an ERISA fiduciary may select proprietary funds *only when* doing so is both loyal and prudent. 29 U.S.C. § 1104(a). Nothing in the regulations or legislative history cited by Defendants alters this bedrock principle. *See* PTE 77-3, 42 Fed. Reg. 18,734 (1977) (exemption "does not relieve a fiduciary" from "the general fiduciary responsibility provisions"); *Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 913 (W.D. Mo. 2017) (same); *cf. Tatum v. RJR Pension Inv. Comm.,* 761 F.3d 346, 360 (4th Cir. 2014) (noting that DOL had declined to "create 'any list of investments...' deemed permissible or impermissible under the prudence rule").[8]

Morgan Stanley also argues that Plaintiffs improperly compare mutual fund fees and "separate account" fees. (Mot. at 14-15).[9] But Plaintiffs do not compare the *total fees* associated with Morgan Stanley's mutual funds and separate accounts. Nor do Plaintiffs challenge fees that specifically cover "reporting, governance, and transparency." (*Id*. at 14). Rather, Plaintiffs focus on Morgan Stanley's fees for two specific services: investment advisory services and administrative services. (*E.g.* SAC ¶¶ 78-87). Morgan Stanley provides substantially *the same* investment advisory services and administrative services to Plan participants and separate account clients. (*E.g. id.* ¶¶ 83-85). Yet it unjustifiably charges Plan participants higher fees for these discrete services. (*E.g. id.* ¶¶ 83-85, 86-89).

Thus, Plaintiffs do not claim that Morgan Stanley should have "scour[ed] the market" for

---

[8] *Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) is distinguishable. It was decided after a six-day bench trial, not on a 12(b) motion. *Id.* at *1. And, it involved a defined benefit plan, not a defined contribution plan. *Id.* at *2. The distinction matters. In a defined benefit plan, participants receive the same benefits regardless of the cost or performance of the investments. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-40 (1999). The fiduciaries bear the risk of poor returns and thus have incentives to invest prudently.

[9] Defendants limit their analysis to the issue of prudence. Plaintiffs, however, allege these fees were disloyal *and* imprudent. (E.g. SAC ¶¶ 219-229). *See Braden*, 588 F.3d at 596 (describing breach as a "failure of effort, competence, or loyalty"); *Moreno*, 2016 WL 5957307, at *6 (same).

better-priced investments. (Mot. at 15). Nor do Plaintiffs claim, as a *per se* rule, that Morgan Stanley could never "favor mutual funds… over institutional alternatives." (*Id.* at 14.) Instead, Morgan Stanley should have selected better-priced investments that were sitting under its nose — its *own* variety of financial solutions. *See Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 476 (M.D.N.C. 2015) ("Plaintiffs are not arguing that Defendants had a duty to scour the market to find and offer any cheaper investment. Instead, Plaintiffs allege that 'lower cost funds with the identical managers, investments styles, and stocks' should have been considered by the Plan.").[10]

Instead of offering these obvious alternatives, Morgan Stanley kept its proprietary funds in the Plan in order to reap undue fees. (*E.g.* SAC ¶¶ 69-91). Taking Plaintiffs' allegations as true, Defendants breached the duty of loyalty. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (allegations of self-interest with respect to fees "state a claim for fiduciary breach"); *Braden*, 588 F.3d at 596 (finding claim for breach of fiduciary duty plausible in light of kickback allegations); *Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1332 (N.D. Ga. 2017) (defendant allegedly selected higher-cost share classes to increase revenue sharing payments).[11]

---

[10] Defendants' cases concern *categorical* claims that Plans should *never* offer retail mutual funds under any circumstances or should *always* select the very lowest-cost funds. *Tibble v. Edison Int'l*, 729 F.3d 1110, 1134 (9th Cir. 2013); *Loomis v. Exelon Corp.*, 658 F. 3d 667, 671 (7th. Cir. 2011); *Renfro v. Unisys Corp.*, 671 F.3d 314, 326-27 (3d Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *Taylor v. United Techs. Corp.*, No. 3:06-CV-1494, 2009 WL 535779, at *10 (D. Conn. Mar. 3, 2009). Here, in contrast, Plaintiffs specify comparable, lower-fee alternatives that Morgan Stanley easily could have offered but chose not to. (*E.g.* SAC ¶¶ 72-91).

[11] *See also Cryer*, 2017 WL 818788, at *4 (defendant allegedly offered product "which charged higher fees than and performed poorly as compared to available comparable non-proprietary funds and products."); *Krueger*, 2012 WL 5873825, at *15 (defendants allegedly "invested in affiliated funds that charged fees that were excessive relative to... alternative investments such as separate managed accounts.") Morgan Stanley relies on cases that, unlike Plaintiffs' claims, lack allegations of self-dealing. (Mot. at 14-15). *E.g. Renfro*, 671 F.3d at 327 ("[P]laintiffs have not contended there was any sort of concealed kickback scheme."); *Loomis*, 658 F.3d at 671 (same). *See Tussey*, 746 F.3d at 336 (distinguishing *Hecker*, *Loomis*, and *Renfro* from cases involving self-dealing).

9

Morgan Stanley also fails to directly address allegations that they disloyally retained three poorly-performing proprietary funds (the Small Company Fund, the Mid-Cap Fund, and the Real Estate Fund) to collect fees from Plan participants. (E.g. SAC ¶¶ 92-149). Instead, Defendants litter their brief with factual assertions, almost all of which rely on extrinsic documents (E.g. Mot. at 8). Not only should this extrinsic evidence be stricken, but "Defendants' assertions raise factual issues that cannot be resolved at the motion to dismiss stage." *Moreno*, 2016 WL 5957307, at *6.[12]

Moreover, these assertions fail on their own terms. For instance, Morgan Stanley points to funds that are *not* the focus of the claims, arguing: 1) that it "offered a broad range of investment strategies" (Mot. at 15); and 2) that it offered certain outside funds alongside the tainted proprietary options (*Id.* at 8). However, "under ERISA, each investment alternative offered by a plan must be judged individually. Therefore, the existence of [non-proprietary] option[s] is irrelevant to determining whether Defendants used a disloyal and imprudent process to select [proprietary] investment options." *Wildman*, 237 F. Supp. 3d at 913 (citation omitted); *Tussey v. ABB, Inc.,* 850 F.3d 951, 957 (8th Cir. 2017) ("The fact the ABB fiduciaries apparently did not always favor [the recordkeeper / investment advisor] as much as they could, or seize every opportunity to send [it] more of the participants' money, does little to undermine the district court's finding.")[13] Indeed,

---

[12] For instance, Morgan Stanley says it selected certain non-affiliated funds over proprietary ones (MPFIX, DINDX, MPLDX) (Mot. at 8 n. 8). This ignores an important fact: Morgan Stanley lost money on each of these funds and had a self-interested reason for excluding them. It was contractually required to waive most or all its investment advisory fees from these three funds, and in the case of MPLDX, was contractually obligated to reimburse the fund for a significant part of its operating costs. This contrasts dramatically with $1 million per year it received in investment advisory fees from the Mid Cap Growth Fund (SAC ¶ 134). These factual disputes only emphasize the inappropriate nature of the Defendants' factual arguments at the motion to dismiss stage.

[13] *See also Tussey*, 746 F. 3d at 336 (rejecting argument that presence of low-cost funds precludes fiduciary breach claim); *Bedrick*, 93 F.3d at 154 ("A fiduciary with a conflict of interest must act as if he is 'free' of such a conflict. 'Free' is an absolute… ERISA commands undivided loyalty to the plan participants."); *Urakhchin*, 2016 WL 4507117, at *6 (presence of unaffiliated funds does

the funds at issue were the only options available in their respective investment categories. (*E.g.* SAC ¶¶ 13, 103, 122, 139). Employees who sought to pursue these strategies had no alternatives.

Morgan Stanley's factual claims that its proprietary funds were "successful," (Mot. at 8) and their "fees were generally below their peer group average" (Mot. at 13), also miss the point.[14] Morgan Stanley could have used its own investment solutions (e.g. separate accounts) to provide Plan participants the same level of "success" for a lower price. Instead, Morgan Stanley offered proprietary funds to collect undue fees. Such conduct is hardly consistent with the "highest [duties] known to the law." *Bierwith*, 680 F.2d at 272 n. 8. *See Krueger*, 2012 WL 5873825, at *15.[15]

In the final analysis, Plaintiffs' allegations of disloyal conduct must be viewed "as a whole" and in conjunction with Plaintiffs' claims of imprudence. *Braden*, 588 F.3d at 596. Morgan Stanley stood to—and did—profit by placing all six proprietary funds in the Plan. (*E.g.* SAC ¶ 90). It charged Plan participants higher fees for *the same* investment advisory and administrative services it provided to separate account clients. (*E.g. id.* ¶¶ 72-91). It also retained three of its proprietary funds for years despite their volatile, poor performance. (*Id.* ¶¶ 92-149). These allegations raise a plausible inference of disloyalty. *See Braden*, 588 F.3d at 596 (plausible claim of breach of

---

not preclude claim for affiliated funds); *Krueger*, 2012 WL 5873825, at *13 ("[M]erely including a sufficient mix of prudent investments along with imprudent options does not satisfy a fiduciary's obligations under ERISA.") (collecting cases).

[14] These allegations rely on material outside the pleading. They too "raise factual issues that cannot be resolved [here]." *Moreno*, 2016 WL 5957307, at *6. The claim that the funds were "successful" is belied by their actual performance, resulting in mass redemptions. (SAC ¶¶ 15-17, 92-149).

[15] *Cf. Pledger*, 240 F. Supp. 3d at 1332 (defendant selected higher-cost share classes to increase revenue sharing payments); *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 349-350 (2010) (Rejecting, under the Investment Company Act, "a categorical rule regarding the comparisons of the fees charged differed types of clients...courts may give such comparisons the weight that they merit in light of the similarities and differences between the services that the clients in question require.").

fiduciary duty based on allegations of excessive fees, poor performance, and self-interest).[16]

## 2.  Imprudence: Plaintiffs' Claims Are Not Based on Hindsight

Contrary to Morgan Stanley's spin, Plaintiffs' prudence claims are not based on mere "hindsight." (Mot. at 9). Plaintiffs allege that the Small Company Fund, the Mid-Cap Fund, and the Real Estate Fund consistently underperformed – and clearly should have been replaced – *throughout* the class period. (SAC ¶¶ 15-18, 92-149). Furthermore, Plaintiffs' allege that these funds suffered from high fees and mass redemptions, performed worse than many readily available alternatives, and were maintained on the Plan solely to benefit Morgan Stanley. *Id.* These facts, "combined with" the allegations of poor performance, state a claim. *PBGC*, 712 F.3d at 721.

Under *PBGC*, an ERISA claim "may survive a motion to dismiss... if the complaint allege[s] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *Id.* at 718 (citation omitted). While parties cannot simply "rely, *after the fact*, on the magnitude of the decrease in the [] price." (*id.*), allegations of ongoing underperformance during the relevant time period raise an inference of imprudence. "For instance, the complaint may allege facts sufficient to raise a plausible inference ... that a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative." *Id.* at 719. "[I]n some cases, it would be reasonable to infer from a decline in the price of a security [i.e., poor performance], ***combined with other alleged facts***, that the security no longer was a sound investment." *Id*. at 721.[17]

---

[16] *See, e.g., Moreno*, 2016 WL 5957307, at *6 (plausible breach based on excessive fees plus self-interest); *Wildman*, 237 F. Supp. 3d at 914 (same); *Urakhchin*, 2016 WL 4507117, at *7 (same).

[17] Defendants also cite several cases that employ inapplicable standards. (Mot. at 12-13, 21-22). *Amgen v. Harris*, 136 S.Ct. 758 (2016), is clearly limited to the unique context of employee stock ownership (ESOP) plans. *Jenkins v. Yager*, 444 F.3d 916 (7th Cir. 2006) and *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728 (7th Cir. 2006), were decided at *summary judgment* with the benefit

Unlike in *PBGC*, Plaintiffs do not merely allege that the investments "turn[ed] out" badly, *id.*; they were bad *all along*. *See Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017) (rejecting "hindsight" argument where plaintiff alleged that the underperformance "was known and/or available to Defendants each and every year during the pertinent period."). Plaintiffs allege that the Small Company Fund and the Mid-Cap Fund underperformed *during* the class period compared to several benchmarks, including (1) the funds' own self-professed benchmarks (SAC ¶¶ 110-112, 125-126, 129-130); (2) other funds with equivalent investment strategies (*id.* ¶¶110-112, 129-130); and (3) applicable Morningstar categories (*id.* ¶¶ 108-109, 123). Plaintiffs likewise allege that the Real Estate Fund underperformed throughout the class period relative to its benchmark and numerous comparators. (*id.* ¶¶ 140-45). Further, the Small Company Fund had been performing poorly *prior to* the class period and the Real Estate Fund was relatively untested prior to the class period. (*E.g.* SAC ¶¶ 15, 104-107, 137.) In other words, Morgan Stanley should have removed these funds from the Plan as early as 2010, the beginning of the class period. *See Tibble,* 135 S. Ct. at 1828 (discussing the "continuing duty to monitor" investments).[18]

Plaintiffs also allege additional facts supporting an inference of imprudence: (1) *all* of the proprietary funds had high costs relative to comparable investments (SAC ¶¶ 106, 114, 131; *see also id.* ¶¶ 76-77); (2) the Small Company and Mid-Cap Funds suffered mass redemptions (*e.g. id.* ¶¶ 16-17, 113, 127-28); (3) the funds were the only funds available to Plan participants in their

---

of a fully developed record. Both cases were also factually distinguishable. *See LaSalle*, 446 F.3d at 732 (discussing trustee facing a potential "run" on an ESOP); *Jenkins*, 444 F.3d at 921 (plan fiduciary "had selected [non-proprietary] funds that were conservative and not volatile. . . .").

[18] *See also Pledger*, 240 F. Supp. 3d at 1326 (choosing "investment options with poor performance histories [instead of] better performing alternatives states a claim for fiduciary breach when there is also an allegation" of disloyalty); *Krueger*, 2012 WL 5873825, at *11 (selecting investments with "with poor or non-existent performance histories" supports fiduciary breach claim).

respective investment strategies (*id.* ¶¶ 64-65, 103, 122, 139); and (4) **Morgan Stanley had self-interested motives for retaining each of the funds in the Plan.** (*E.g. id. ¶¶* 70-71, 118, 134, 148). Unlike in *PBGC,* these are not general market trends. 712 F.3d at 722-23 (failure to connect "warning signs" to the securities at issue). They are specific defects with the investments at issue.[19]

Defendants blindly assert that Plaintiffs' performance comparisons are "misleading." (Mot. at 11). But, a plaintiff can state a claim by alleging that "a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative." *PBGC*, 712 F.3d at 719; *Braden*, 588 F.3d at 590 ("specific comparisons" to "similar but more cost-effective funds available in the market"). Companies such as Vanguard, T. Rowe Price, and Prudential offered just such alternatives. (E.g. SAC ¶¶ 95, 111-15, 129-32, 142-46).[20]

Thus, Plaintiffs do not allege that Morgan Stanley was "required to choose index funds"

---

[19] Morgan Stanley proposes a novel and "legally unsupported" standard: "that a prudent fiduciary would remove an investment product only after, at minimum, three consecutive years of underperformance." (Mot. at 12). Plaintiffs have never endorsed such an anomalous test. In fact, Plaintiffs' counsel informed the court that he was "not sure that the law has a number" of months or years after which plan fiduciaries must remove a poorly-performing investment. Counsel then suggested *one* scenario in which investment managers should remove an investment: three years of *cumulative* underperformance (not *annual* underperformance). (*See* 12/15/16 Tr. of Mot. Conf. at 7:22-8:7.) Plaintiffs allegations plainly meet this benchmark (SAC ¶¶ 112, 129-130, 144), but their claims do not rest on it. Cumulative underperformance is one of a constellation of allegations of imprudence. (SAC ¶¶ 15-18, 92-149). At bottom, the question of when the proprietary funds became imprudent investments must be answered through discovery; not on motion to dismiss.

[20] Morgan Stanley's blithe claim that Vanguard funds are a "different species" from the proprietary funds (Mot. at 11) is misplaced on a motion to dismiss. *Wildman*, 237 F. Supp. 3d at 914 (rejecting identical argument). The Vanguard funds have the very same investment objectives as the Morgan Stanley funds. They also replicate the investment benchmark under which Morgan Stanley manages its funds (e.g. Russell Small Cap Growth Index, Russell Mid Cap Growth Index). For prudent investors, the key differences between funds boil down to performance and fees. *Cf.* Restatement (Third) of Trusts, ch. 17, intro. note; *id*. § 90 cmt. h(2) (noting active management strategies involve investigation expenses and transaction costs, which investors must consider in relation to the likelihood of increased return from such strategies.). Morgan Stanley's funds would have been a prudent choice over Vanguard only if they had shown any actual propensity to beat their stated benchmarks and thus outperform Vanguard. They consistently failed to do so.

(Mot. at 11)—just that Morgan Stanley was required to choose *better* funds. Morgan Stanley's arguments about performance "raise factual issues that cannot be resolved at the motion to dismiss stage." *Moreno*, 2016 WL 5957307, at *6. Ultimately, the funds' underperformance relative to peers must be considered together with their underperformance relative to benchmarks (e.g. SAC ¶¶ 97, 110-11, 125, 130, 140-41), low Morningstar ratings (*id.* ¶¶ 108-09, 123), excessive fees, (*e.g. id.* ¶¶ 76, 106, 114, 131), and mass redemptions (*e.g. id.* ¶¶ 16, 113, 127-28), as well as Defendants' self-interested motivations. (*e.g. id.* ¶¶ 15, 18, 70-71, 118, 134, 148). Accordingly, Plaintiffs plausibly allege that "an adequate investigation would have revealed to a reasonable fiduciary that the investment[s] at issue [were] improvident." *PBGC*, 712 F.3d at 718.[21]

## B. Plaintiffs Adequately Allege that Morgan Stanley Breached Its Fiduciary Duties by Retaining the BlackRock Trusts

Plaintiffs allege that Morgan Stanley violated its duty of prudence by offering seven high-cost and poor-performing BlackRock Trusts. (SAC ¶¶ 157-62, 165-192). And, because Morgan Stanley's actions were driven by the substantial commissions and fees it received from BlackRock, it also breached its duty of loyalty to Plan participants. (*e.g.* SAC ¶¶ 20, 151-53, 162)

### 1. Disloyalty: Plaintiffs Plausibly Allege Morgan Stanley Put Profits Ahead of Participants by Retaining the BlackRock Trusts

Morgan Stanley seeks to downplay its "business relationship" with BlackRock. (Mot. at 23). But Defendants elide Plaintiffs' allegations concerning the insidious nature of the conflict of interest. Plaintiffs allege that, unlike other financial services providers, BlackRock paid Morgan Stanley to distribute its funds. (SAC ¶ 151). They also allege that BlackRock paid Morgan Stanley

---

[21] *Accord Moreno*, 2016 WL 5957307, at *6 (allegations of underperformance, excessive fees, and self-interested motivation sufficient to state a claim); *Braden*, 588 F.3d at 596 (plaintiff sufficiently alleged breach where Plan included a limited menu of poor-performing funds and where "these options were chosen to benefit the trustee at the expense of the participants").

fees and commissions to place purchase and sell orders for its securities. (*Id.* ¶ 152). Accordingly, Defendants stood to benefit from placing BlackRock's Trusts in the Plan. (*Id.* ¶ 153).[22] This lucrative arrangement contributed to Morgan Stanley's decision to offer untested BlackRock Trusts despite their high fees and poor performance. (*Id.* ¶¶ 154-192). Instead of addressing these allegations, Defendants offer extrinsic assertions of BlackRock's "strong reputation" and the "popularity" of its target date funds. (Mot. at 24). But these factual claims about BlackRock's marketing capabilities are wholly irrelevant and raise disputes that cannot be resolved on a 12(b)(6) motion. *Moreno*, 2016 WL 5957307, at *6.[23]

As with the proprietary funds, Plaintiffs' allegations that Morgan Stanley disloyally retained the BlackRock Trusts must be viewed "as a whole" along with Plaintiffs' allegations of imprudence. *Braden*, 588 F.3d at 596. Plaintiffs claim that Morgan Stanley loaded the BlackRock Trusts onto the Plan—and retained them despite their poor performance—because of the fees and commissions it received from BlackRock. (SAC ¶¶ 151-53, 162). Together, these allegations raise a plausible inference of disloyalty. *See Braden*, 588 F.3d at 596.[24]

### 2. Imprudence: The BlackRock Trusts Were Imprudent Investments

Morgan Stanley again misconstrues *PBGC*, arguing that Plaintiffs' prudence claims about the BlackRock Trusts amount to impermissible "hindsight" (Mot. at 20.) To the contrary, Plaintiffs

---

[22] Defendants' supposition that the Plan fiduciaries were not "*aware* of any business relationship with BlackRock" (Mot. at 23) is mystifying in light of Plaintiffs' allegations. (SAC ¶¶ 151-53).

[23] Moreover, Defendants' contention that Plaintiffs' theory would "preclude Morgan Stanley from selecting funds from T. Rowe Price and Vanguard" relies on facts outside of the SAC. (Mot. at 23). It also eschews Plaintiffs' allegation that Vanguard did not pay for fund distribution. (SAC ¶ 151). In contrast, BlackRock compensates Defendants for transactions. (*Id.* ¶¶ 151-152).

[24] *See also Wildman*, 237 F. Supp. 3d at 914 (plausible claim where Plaintiffs "allege Defendants acted in their own self-interest by following a process that failed to consider lower-cost funds in favor of higher-cost [proprietary] funds."); *Urakhchin*, 2016 WL 4507117, at *7 (finding claim of breach of duty in light of Defendants' alleged course of conduct and self-interested motivations).

allege that the BlackRock Trusts were imprudent investments *throughout the class period*. *Cf.* *PBGC*, 712 F.3d at 719 ("superior alternative investment was readily apparent").

To start, Morgan Stanley should have removed the Trusts at the beginning of the class period. Three of the Trusts had poor historical performance data prior to the class period, and four were altogether untested. (SAC ¶¶ 156, 158-60, 165, 169, 173, 177, 181, 185, 189). Thus, Morgan Stanley should have known that the investments were poor performers (or just too untested) to be in the Plan. *Tibble,* 135 S. Ct. at 1828-29 ("continuing duty to monitor investments and remove imprudent ones").[25] Predictably, the funds' poor performance continued, and the Trusts exhibited stark annualized (and cumulative) underperformance from 2010 through 2016 relative to the S&P Target Date Index and several comparable funds. (SAC ¶¶ 157, 166-67, 170-71, 174-75, 178-79, 182-83, 186-87, 190-91). "[C]ombined with" this performance data, *PBGC*, 712 F.3d at 721, the Trusts: (1) carried low Morningstar ratings (*e.g.* SAC ¶ 157); (2) had high costs relative to several comparable investments (*e.g. id.* ¶ 161); (3) were the only target date options in the Plan (*e.g. id.* ¶ 154); and (4) benefited Morgan Stanley at the expense of participants (*e.g. id.* ¶¶ 151-53, 162).

As with the proprietary funds, Morgan Stanley attacks Plaintiffs' comparisons of the BlackRock Trusts to peer funds. (Mot. At 20). Morgan Stanley insists that Plaintiffs must identify "structural" differences between the BlackRock Trusts and its peers, such as differences in "glide paths" and "landing points." (*Id.* at 20-21). The funds differ, however, where it matters—in fees and performance. The BlackRock Trusts regularly underperformed in each year of the class period compared to Vanguard, State Street, Voya, and the benchmark. (SAC ¶¶ 157, 161, 166-67, 170-

---

[25] *See also Pledger*, 240 F. Supp. 3d at 1326 (choosing "investment options with poor performance histories [instead of] better performing alternatives states a claim for fiduciary breach when there is also an allegation" of disloyalty); *Krueger*, 2012 WL 5873825, at *11 (selecting investments "with poor or non-existent performance histories" supports fiduciary breach claim).

71, 174-75, 178-79, 182-83, 186-87, 190-91).  Morgan Stanley had a duty to act but did not.[26]

Defendants challenge Plaintiffs' fee allegations (Mot. at 22-23), principally arguing that it is improper to compare BlackRock to Vanguard.  Yet, the comparison is entirely appropriate. Morgan Stanley certainly would not have had to "scour the market" to find Vanguard's target-date funds; many 401(k) plans offer them. (SAC ¶¶ 95, 157). It is bizarre to suggest that Vanguard is disqualified as a comparator because it is "an especially low-cost provider." (Mot. at 22.) All things being equal, fiduciaries *should* look for the lowest fees. *See Moreno,* 2016 WL 5957307, at *6 (higher proprietary fund fees compared to Vanguard supports fiduciary breach claim).[27] Moreover, Plaintiffs need not show that BlackRock's fees were "excessive relative to the services rendered." (Mot. at 23). That standard applies to claims under the Investment Company Act ("ICA"), not ERISA. *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 340 (2d Cir. 2006).[28]

---

[26] Defendants claim to find support for the "structural features" argument in *Loomis* and *Meiners*. But neither case bears this interpretation. *Loomis*, in fact, rejects an argument about fund structure: i.e. that retail funds must be *per se* structurally unsound. 658 F.3d at 671-73. *Meiners*, for its part, criticizes the plaintiff for *solely* comparing the subject fund to only one fund, Vanguard, without providing a "benchmark against which the . . . funds can meaningfully be compared." *Meiners v. Wells Fargo & Co.*, 2017 WL 2303968, at *2 (D. Minn. May 25, 2017). Here, by contrast, not only do Plaintiffs compare the BlackRock Trusts to a benchmark, but they also compare each Trust to *three* competitors, only one of which is Vanguard. *See PBGC*, 712 F.3d at 719 ("[A] superior alternative investment was readily apparent."); *Braden*, 588 F.3d at 590 ("specific comparisons" to cheaper but better-performing funds)

[27] *See also Braden*, 588 F.3d at 596; *Pledger*, 240 F. Supp. 3d at 1327 (self-interest and underperformance compared to J.P. Morgan, Vanguard, and T. Rowe Price); *Gipson v. Wells Fargo & Co.*, No. CIV. 08-4546, 2009 WL 702004, at *5 (D. Minn. Mar. 13, 2009) (underperformance compared to Vanguard); *Wildman*, 237 F. Supp. 3d at 914 (higher fees plus self-interest states claim; appropriateness of comparison to Vanguard is a factual issue); *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197–98 (9th Cir. 2016) ("[C]ost-conscious management is fundamental to prudence.") (quoting Restatement (Third) Of Trusts § 90, cmt. b.).

[28] Under the ICA, a plaintiff must prove a fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Amron*, 464 F.3d at 340 (citation omitted). In a non-precedential opinion, *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x. 31, 33 (2d Cir. 2009), the Second Circuit

Finally, Morgan Stanley again reverts to its own factual allegations—all of which fundamentally distort the performance record of the BlackRock Trusts.[29] Not only should these facts be stricken, but they raise improper factual disputes. Viewing Plaintiffs' allegations as whole—including poor performance, high fees, and self-interest—Plaintiffs adequately plead that Morgan Stanley breached its duty of prudence. *See Moreno*, 2016 WL 5957307, at *6.[30]

## IV.   Plaintiffs State Prohibited Transactions Claims and Need Not Plead Around PTE 77-3

Plaintiffs have also stated viable claims that the Plan engaged in prohibited transactions under 29 U.S.C. § 1106(a)-(b). This statute expressly prohibits fiduciaries from engaging in self-dealing, including by diverting Plan assets for their own purposes. These protections are "broadly construed" and applied. *Lowen v. Tower Asset Mgmt., Inc*., 829 F.2d 1209, 1213 (2d Cir. 1987).

Defendants do not contest that Plaintiffs allege facts supporting their claims. Instead, they argue that the claims should be dismissed under the exemption in PTE 77-3. This argument fails.

---

drew from the ICA. However, this standard is improper given the vast difference between ICA and ERISA cases. Unlike ERISA, the ICA does not require fees to be reasonable. *Compare* 29 U.S.C. §§ 1103(c)(1), 1104(a)(1)(A)(ii), 1108(b)(2) *with Jones*, 559 U.S. at 341 (the ICA does "not permit a compensation agreement to be reviewed in court for 'reasonableness'"). Moreover, in *Young*, "Plaintiffs also allege[d] no facts concerning other factors relevant to determining whether a fee is excessive under the circumstances." 325 F. App'x. at 33. Here, Plaintiffs allege several additional facts: the BlackRock Trusts' high fees, *together with low performance and Defendants' perverse incentives for selecting them*. These allegations must be viewed "as a whole" and not "parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

[29] Here is small sample of Defendants' distortions:

- "The 2012 [disclosure] reveals that, at that time, *all* of the BlackRock Funds were beating their benchmarks since inception." (Mot. at 21). But this is meaningless; the Fee Disclosure shows none of the Funds had even a 1-year performance history at the time. Ex I. at 4-5.

- "[I]n 2013, four of the BlackRock Funds were outperforming their respective benchmarks net of fees. . ." (Mot. at 21 (citing Ex. J)). In fact, according to Ex. J, not one Fund identified in the SAC outperformed its benchmark for 1, 5, or 10-year performance. Ex J at 8.

[30] *See also Wildman*, 237 F. Supp. 3d at 914; *Braden*, 588 F.3d at 596.

19

*First*, the exemption is an affirmative defense on which Defendants bear the burden of proof. *Lowen*, 829 F.2d at 1215. Thus, it is not appropriate for resolution on a 12(b)(6) motion. *See, e.g., Allen*, 835 F.3d at 676 ("an ERISA plaintiff need not plead the absence of exemptions to prohibited transactions"); *Braden*, 588 F.3d 585 at 601-602 & n.10 (refusing to consider exemptions at 12(b)(6) stage because they are affirmative defenses).[31] These cases accord with the basic rule that plaintiffs have "no obligation to anticipate and refute potential affirmative defenses" in a complaint. *Rosen v. Brookhaven*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002); *see Jones v. Bock*, 549 U.S. 199, 211-12 (2007) (plaintiff need not plead absence of even a "mandatory" affirmative defense such as administrative exhaustion); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (defendant has burden to plead qualified immunity defense); Fed. R. Civ. P. 8(c).[32]

*Second*, "it is not clear from the face of the Complaint or judicially noticed court filings that" an exemption applies. *Moreno*, 2016 WL 5957307, at *6. In fact, Plaintiffs' allegations contradict the exemption. "PTE 77-3 require[s] that the transaction provide the fiduciaries or parties in interest no more than reasonable compensation." *Krueger*, 2012 WL 5873825, at *17. Here, Plaintiffs allege, Defendants charged *unreasonable* advisory fees.[33] *See Abraha v. Colonial*

---

[31] *See also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 471 n.7 (S.D.N.Y. 2014) (under exemptions, "it is the fiduciary's burden to show the fees were reasonable," and Plaintiff need not " plead unreasonableness.") (citations omitted); *Harris v. Amgen, Inc*., 788 F.3d 916, 943 (9th Cir. 2015), *rev'd on other grounds*, 136 S. Ct. 758; *Goldenberg v. Indel, Inc*., 741 F. Supp. 2d 618, 632 (D.N.J. 2010) (rejecting *Mehling*).

[32] Defendants claim that courts are "divided" on this issue.  In fact, Plaintiffs' cases represent the great weight of authority and the far better view. As the Supreme Court explained in *Jones*, "courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns," 549 U.S. at 212, basically what Defendants advocate here.

[33] Defendants notably avoid the exemption in 29 U.S.C. § 1108(b)(8)(B), which expressly demands that the fiduciary receive "no more than reasonable compensation." But Defendants cannot skirt this provision so easily. The Secretary of Labor receives its authority to promulgate exemptions

*Parking, Inc.*, 243 F. Supp. 3d 179, 190 (D.D.C. 2017) (allegations of undue administrative fees state a prohibited transaction claim). Further, PTE 77-3(d) requires that *all* dealings be "on a basis no less favorable to the plan than such dealings are with other shareholders." Morgan Stanley failed this test: it treated institutional clients more favorably by calling them "separate accounts" and slashing their fees. *Cf. Moreno*, 2016 WL 5957307, at *7 ("the Complaint alleges that the … Plan fiduciaries failed to include in the Plan the lowest-cost share classes while such share classes were made available to … institutional clients.").[34] Defendants thereby offered lower fees for the exact same investment options to outside investors instead of Plan participants.[35] Thus, the pleadings, taken as a whole, are sufficient to challenge the exemption.[36] Whether or not the exemption is actually met is a factual question that cannot be resolved on a motion to dismiss. *Hamby v. Morgan Asset Mgmt.*, 692 F. Supp. 2d 944, 960-61 (W.D. Tenn. 2010); *accord Wildman*, 237 F. Supp. 3d at 913 ("[C]ompliance with PTE 77-3 is a question of fact that cannot be resolved at this stage.").

**V.    Plaintiffs' Claims Are Not Barred by The Statute of Limitations, and in Any Event, the Court Cannot Determine as Much in the Posture of the Present Motion to Dismiss**

"Dismissal for failure to state a claim based on a statute of limitations is appropriate only

---

(including PTE 77-3) from § 1108 (*see* § 1108(a)) and cannot negate the statute.

[34] *See also Krueger*, 2012 WL 5873825, at *16-17 (similar case where defendant offered lowest cost shares to institutional clients but not to Plan); *Gipson*, 2009 WL 702004, at *4 (same).

[35] Defendants' apparent position – that the "reasonable compensation" rule does not apply and that mutual funds and "separate accounts" cannot be likened under PTE 77-3(d) – would have perverse results. It would allow fiduciaries to charge high fees to captive Plan members (and no one else); outside clients could be given special treatment in the guise of "separate accounts." This is hardly "in the interests" of Plan participants or "protective of the[ir] rights." 29 U.S.C. § 1108(a)(2-3).

[36] *Leber* and *Mehling* are distinguishable. There were no allegations challenging the exemption. *See Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510 (E.D. Pa. 2001). Further, *Leber* noted that the prohibited transaction exemptions may not apply *at all* in cases of self-dealing, the very situation at hand here. *Leber v. Citigroup, Inc.*, 2010 WL 935442, at *11 (S.D.N.Y. Mar. 16, 2010).

21

if a complaint shows clearly that a claim is not timely." *Toussaint v. JJ Weiser & Co.*, No. 04 Civ. 2592, 2005 WL 356834, at *11 (S.D.N.Y. Feb. 13, 2005).[37] Defendants do not meet this bar.

### A.  Plaintiffs' ERISA Claims Are Not Precluded by the "Actual Knowledge" Rule

Morgan Stanley principally argues that Plaintiffs claims are time-barred because Plaintiffs "are charged with knowledge" of facts contained in participant disclosures. (Mot. at 16).[38] But, ERISA's three-year statute of limitation does not run until the "plaintiff ha[s] *actual knowledge* of the breach or violation." 29 U.S.C.A. § 1113(2) (emphasis added). To have "actual knowledge," a plaintiff must *actually* possess *all* material facts necessary to constitute the claim and to enable the plaintiff to understand that the fiduciary has breached its duty. *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-CV-9329, 2014 WL 4851816, at *3 (S.D.N.Y. Sept. 30, 2014) (citing *Caputo*).[39] Thus, to warrant dismissal, Morgan Stanley must show on the face of the complaint that Plaintiffs "knew not only of the relevant events that occurred, but also that those events supported a claim for breach of fiduciary duty or violation under ERISA." *Toussaint*, 2005 WL 356834, at *11.

---

[37] *Accord Wallace Wood Properties, LLC v. Wood*, 669 F. App'x. 33, 34 (2d Cir. 2016), as amended (Nov. 17, 2016) (untimeliness must be "clear on the face of the complaint").

[38] Defendants do not challenge claims which are based on the disloyal and imprudent *retention* of the proprietary funds and BlackRock Trusts. (Mot. at 7 n. 6, 22 n. 26). As Morgan Stanley concedes, it had a continuing obligation to monitor Plan investments and to remove imprudent ones. Therefore, its alleged violations were recurring, and it accrued liability on an ongoing basis, repeatedly resetting the limitations clock. *Tibble*, 135 S. Ct. at 1829 ("[S]o long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely."); *cf. Bona v. Barasch*, No. 01 Civ. 2289, 2003 WL 1395932, at *19 (S.D.N.Y. Mar. 20, 2003) (renewal of relevant contracts, despite continuing duty, was repeated violation giving rise to new limitations period); *Katsaros v. Cody*, 568 F. Supp. 360, 370 (E.D.N.Y. 1983) (period did not accrue where fiduciary's obligation "was a continuing one"), *aff'd* 744 F.2d 270, 280 (2d Cir. 1984).

[39] "Actual knowledge" is "strictly construed" and distinct from "constructive knowledge"; "what plaintiffs '*should have known*' or what they suspected must be distinguished from what they *actually* knew." *Leber*, 2014 WL 4851816, at *3 (citations omitted). "[N]otice that something was awry" is insufficient to provide "specific knowledge of the actual breach of duty'" *Id*. at *5.

Moreover, Defendants cannot contradict the SAC with extrinsic evidence. Even if such materials were considered here, they do not show *actual* knowledge of the violations. *See, e.g., Moreno*, 2016 WL 5957307, at *4 ("Defendants have not shown that it is clear from the face of the Complaint or any judicially noticed court filings that Plaintiffs actually knew of the fee or performance data for the comparable alternative funds more than three years before . . . this suit."); *Toussaint*, 2005 WL 356834, at *12 (pleadings did not establish "actual knowledge").[40]

Thus, Defendants' assertions are immaterial. Despite any Plan disclosures, Plaintiffs were not aware the fees were excessive relative to what Morgan Stanley charged institutional clients. *See* SAC ¶¶ 91, 99. Similarly, Plaintiffs did not know the fees on the BlackRock Trusts exceeded comparable alternatives. *Id*. ¶ 163. The same holds true for Plaintiffs' allegations of underperformance. *Id*. ¶¶ 99, 163. Without comparative data, Plaintiffs lacked critical facts needed to discern and assert a claim. *See Moreno*, 2016 WL 5957307, at *4 (disclosure of fees and performance data cannot amount to "actual knowledge" where "comparator funds' fees and performance are material to Plaintiffs understanding that ERISA has been violated"); *Leber*, 2014 WL 4851816, at *5 ("Plaintiffs could not have known that the fees were excessive, and thus a basis for an ERISA claim, without the relevant comparison point… fees for comparable funds.").[41]

---

[40] *See generally Schutltz v. Stoner*, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (indicating that the "factual issue" of "actual knowledge" should not be resolved on a motion to dismiss).

[41] Plaintiffs also lacked pertinent information about Morgan Stanley's decision-making process. SAC ¶¶ 99, 163. *See, e.g., Brown v. Am. Life Holdings*, 190 F.3d 856, 859 (8th Cir. 1999) ("[I]f the fiduciary made an *imprudent* investment, actual knowledge of the breach would usually require some knowledge of how the fiduciary selected the investment.") (citing cases); *Fish v. Greatbanc Trust*, 749 F.3d 671, 686 (7th Cir. 2014) ("Whether the transaction here was prohibited depends on the extent of the fiduciaries' processes used to evaluate it. Plaintiffs did not know about the alleged inadequacy of those processes").

Likewise, a party who brings a claim based on alleged self-dealing lacks "actual knowledge" until acquiring knowledge that the fiduciary was indeed motivated by self-interest. *See Leber*, 2014 WL 4851816, at *5 n.8 (citing cases); *Toussaint*, 2005 WL 356834, at *11-12 (allegations that

Consequently, Defendants' cases are distinguishable. *See Leber*, 2014 WL 4851816, at *4-5 (distinguishing and rejecting *Young*); *Moreno*, 2016 WL 5957307, at *4 (same).[42] Even if a "willful blindness" doctrine were to be applied (*but see Fish v. Greatbanc Trust*, 749 F.3d 671, 684-85 (7th Cir. 2014) (questioning the doctrine and declining to apply it even at summary judgment)), Plaintiffs cannot be deemed willfully blind to several facts necessary to the claims.[43]

### B.  The Prohibited Transactions Claims Are Not Time-Barred

Defendants argue that Plaintiffs cannot raise a prohibited transaction claim more than six years after the addition of the funds to the Plan. This disregards the continuous obligation to ensure the propriety of investments. *See Tibble*, 135 S. Ct. at 1828.[44] On an ongoing basis, ERISA fiduciaries make affirmative decisions to offer each fund to Plan participants. And fiduciaries accept participants' Plan contributions and place them into the chosen funds. Where an investment vehicle is tainted by self-dealing, each executed trade is a prohibited transaction.

Moreover, as in *Moreno*, Plaintiffs claim that Defendants' assessments of excessive fees

---

defendants were overcharging premiums and concealing actual claims and expenses do not establish *actual knowledge* of kickback scheme). Here, there is no indication that Plaintiffs knew that BlackRock made substantial payments to Morgan Stanley to promote the sale of their funds.

[42] *See also Bona*, 2003 WL 1395932, at *16 ("public attention" and reports filed with IRS did not provide "actual knowledge" of violations); *George v. Kraft Foods Global, Inc*., 814 F. Supp. 2d 832, 851 (N.D. Ill. 2011) ("Merely pointing to communications which provided information about the Funds' structure, investment strategy, fees, and performance is not enough to provide Plaintiffs' with actual knowledge of the breach of fiduciary duty that Plaintiffs are alleging.").

[43] Moreover, Plaintiffs note, *Brown v. Owens Corning Inv. Review Comm*., 622 F.3d 564 (6th Cir. 2010) relies on Sixth Circuit law disavowing this Circuit's precedent on the "actual knowledge" rule. *See id.* at 572; *Wright v. Heyne*, 349 F.3d 321, 328-30 (6th Cir. 2003). Ascribing actual knowledge based on the availability of disclosures "takes one step closer to the 'constructive knowledge' standard that courts have universally rejected." *Leber*, 2014 WL 4851816, at *3 n.4.

[44] Notably, Defendants' cases all predate *Tibble*.

24

constitute prohibited transactions: self-dealing at Plan participants' expense. *See* SAC ¶ 233. Since Defendants assessed these fees on an ongoing basis, Plaintiffs have timely prohibited transactions claims. *See Moreno*, 2016 WL 5957307, at *5; *cf. Morin v. Essentia Health*, No. 16-CV-4397, 2017 WL 4083133, at *7 (D. Minn. Sept. 14, 2017) (rejecting, under *Tibble*, argument that statute of repose bars claim for unreasonable recordkeeping fees).[45] Defendants here charged higher fees than they assessed to equivalent separate account clients – for the sole purpose of self-enrichment.

## VI.   Plaintiffs State a Valid Monitoring Claim (Count VI)

Plaintiffs claim that Defendants failed to monitor the Investment Committee's actions. As Plaintiffs' primary claims survive, this derivative claim also survives. *Moreno*, 2016 WL 5957307, at *8; *Wildman*, 237 F. Supp. 3d at 915. Despite Defendants' contentions, Plaintiffs set forth Defendants' breaches in great detail throughout the SAC. In the Monitoring count, they allege that Defendants were responsible for monitoring the Investment Committee along with precisely what Defendants failed to do in terms of monitoring. *See* SAC ¶ 258. This is sufficient to state a claim. *See, e.g., Krueger*, 2012 WL 5873825, at *18; *Urakhchin*, 2016 WL 4507117, at *7.[46]

## CONCLUSION

Defendants' Motion to Dismiss is built on impermissible factual submissions and assertions. In essence, Defendants dispute the facts pled in the SAC. But the SAC as a whole adequately alleges a self-dealing scheme that would establish breaches of the duties of loyalty and prudence as well as prohibited transactions. Defendants' motion must be denied in all respects.

---

[45] Plaintiffs note that ERISA "does not allow a fiduciary to set its own administrative fees and directly collect those fees from plan assets." *Perez v. Chimes D.C., Inc*., No. CV RDB-15-3315, 2016 WL 5815443, at *15 (D. Md. Oct. 5, 2016) (citation omitted).

[46] The contention that Defendants lacked "a system in place" to monitor and evaluate appointees (SAC ¶ 258(a)) was considered particularly significant in *Urakhchin*, 2016 WL 4507117, at *7.

Dated:  January 11, 2017                    **SANFORD HEISLER SHARP, LLP**

                          By:      */s/ Charles Field*

                          Jeremy Heisler (JH-0145)
                          Andrew Melzer (AM-7649)
                          David Tracey (DT-8106)
                          **SANFORD HEISLER SHARP, LLP**
                          1350 Avenue of the Americas
                          31st Floor
                          New York, New York 10019
                          Phone: (646) 402-5650
                          jheisler@sanfordheisler.com
                          dtracey@sanfordheisler.com

                          David Sanford (*Pro Hac Vice*)
                          **SANFORD HEISLER SHARP, LLP**
                          1666 Connecticut Ave. NW
                          Suite 310
                          Washington, D.C. 20009
                          Telephone: (202) 742-7780
                          dsanford@sanfordheisler.com

                          Charles H. Field (*Pro Hac Vice*)
                          Edward Chapin, CA Bar No. 053287
                          **SANFORD HEISLER SHARP, LLP**
                          655 West Broadway
                          Suite 1700
                          San Diego, California 92101
                          Phone:  (619) 577-4253
                          cfield@sanfordheisler.com
                          echapin@sanfordheisler.com

                          *Attorneys for Plaintiffs and the Proposed Class*

26