UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT J. PATTERSON, RALPH COLO, and TERRI LO SASSO individually and as representatives of a class of similarly situated persons of the Morgan Stanley Retirement Plan,<br><br>    Plaintiffs,<br><br>  v.<br><br>MORGAN STANLEY, Morgan Stanley Domestic Holdings, Inc., Morgan Stanley & Co., LLC, Morgan Stanley Retirement Plan Investment Committee, and John Does 1–30,<br><br>    Defendants. | Case No. 1:16-CV-6568 (RJS)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
UNDER RULES 12(b)(1) AND 12(b)(6)**

Pamela A. Miller
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pmiller@omm.com

Brian D. Boyle, *admitted pro hac vice*
Meaghan VerGow, *admitted pro hac vice*
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
bboyle@omm.com
mvergow@omm.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.      PLAINTIFFS' FUND-SPECIFIC CLAIMS DEFEAT THEIR ATTEMPT
           TO ESTABLISH DERIVATIVE AND CLASS STANDING ............................... 2

    II.     PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED ANY FIDUCIARY
           BREACH IN CONNECTION WITH THE MS FUNDS ...................................... 3

           A.      Plaintiffs' Disloyalty Claims Are Deficient as a Matter of Law ................ 3

           B.      Plaintiffs Do Not Plausibly Allege That the MS Funds Were
                 Imprudently Retained ................................................................................... 5

    III.    PLAINTIFFS' PROHIBITED TRANSACTION CLAIMS MUST BE
           DISMISSED ........................................................................................................ 6

           A.      Plaintiffs' Prohibited Transaction Claims Are Untimely ............................ 6

           B.      Plaintiffs Fail to Plead a Prohibited Transaction in Any Event .................. 7

    IV.    PLAINTIFFS' CHALLENGES TO THE BLACKROCK FUNDS ARE
           BASELESS .......................................................................................................... 8

           A.      Plaintiffs' Fanciful Loyalty Claim Must Be Dismissed ............................. 8

           B.      Plaintiffs' Prudence Challenge Is Equally Deficient .................................. 9

    V.     PLAINTIFFS' DUTY TO MONITOR CLAIM COLLAPSES WITH
           THEIR FAILURE TO PLEAD ANY UNDERLYING BREACH....................... 10

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page

**CASES**

*David v. Alphin*,
  704 F.3d 327 (4th Cir. 2013) .................................................................................. 7

*Dupree v. Prudential Ins. Co. of Am.*,
  2007 WL 2263892 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10, 2007) ............................ 3

*Jenkins v. Yager*,
  444 F.3d 916 (7th Cir. 2006) .................................................................................. 9

*Leber v. Citigroup, Inc.*,
  2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ................................................................. 8

*Marshall v. Northrop Grumman Corp.*,
  2017 WL 2930839 (C.D. Cal. Jan. 30, 2017) .............................................................. 2

*Meiners v. Wells Fargo & Co.*,
  2017 WL 2303968 (D. Minn. May 25, 2017) ............................................................... 10

*Patterson v. Capital Grp. Cos.*,
  No. 2:17-cv-04399 (C.D. Cal. Jan. 23, 2018) ............................................................. 7

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.
  Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) .................................................................................. 10

*Perez v. First Bankers Tr. Servs., Inc.*,
  210 F. Supp. 3d 518 (S.D.N.Y. 2016) ....................................................................... 4

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of
  N.Y. Mellon*,
  775 F.3d 154 (2d Cir. 2014) .................................................................................. 2

*Saint Vincent Catholic Med. Ctrs. v. Morgan Stanley Inv. Mgmt. Inc.*,
  2010 WL 4007224 (S.D.N.Y. Oct. 4, 2010), *aff'd sub nom. Pension Ben.
  Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan
  Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) ............................................... 8

*Troudt v. Oracle Corp.*,
  No. 2:16-cv-00175 (D. Colo. Jan. 30, 2018) .............................................................. 3

*White v. Chevron Corp.*,
  2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ........................................................ 9, 10

*White v. Chevron Corp.*,
  2017 WL 2352137 (N.D. Cal. May 31, 2017) ............................................................. 7

# TABLE OF AUTHORITIES
## (continued)
Page

**STATUTES**

29 U.S.C. § 1106(b) ............................................................................................................ 3

29 U.S.C. § 1108(b) ............................................................................................................ 3

29 U.S.C. § 1132(a)(2) ........................................................................................................ 2

**OTHER AUTHORITIES**

PTE 77-3, 42 Fed. Reg. 18,734 (1977) ............................................................................... 3

# INTRODUCTION

Plaintiffs' Opposition confirms that their claims should be dismissed. Conceding that they cannot show individualized injury from funds in which they did not invest, plaintiffs argue that they need not clear this hurdle because they are bringing claims on behalf of the Plan.[1] Plaintiffs cannot avoid the injury-in-fact requirement. ERISA's enforcement provisions allow suits on behalf of plans, but only parties with constitutional standing can invoke those provisions; plaintiffs here lack constitutional standing to challenge fiduciary decisions about specific funds that did not personally affect them.

The Opposition likewise does not rehabilitate plaintiffs' challenges to the MS Funds. Plaintiffs' hindsight performance critique does not identify any problems with the funds that call into question the prudence and loyalty of the fiduciary decisions to offer the funds as part of a diversified investment lineup. Plaintiffs' fee critique depends on the argument that the Plan should have used a legally prohibited fee structure. And the SAC's prohibited transaction theories are both untimely and implausible, as the Central District of California concluded in dismissing indistinguishable claims just last week.

Plaintiffs' challenge to the BlackRock funds similarly fails. Plaintiffs' hypothetical disloyalty allegations are undercut by the fiduciaries' subsequent decision to remove those funds. And the SAC's own allegations show that the funds outperformed their own benchmarks and plaintiffs' comparators during the class period.

After three unsuccessful attempts to plead plausible claims, plaintiffs' complaint should be dismissed in its entirety and with prejudice.

---

[1] This reply brief retains the same naming conventions and abbreviation protocols as defendants' opening memorandum in support of the motion to dismiss (ECF No. 93).

# ARGUMENT

I. **PLAINTIFFS' FUND-SPECIFIC CLAIMS DEFEAT THEIR ATTEMPT TO ESTABLISH DERIVATIVE AND CLASS STANDING**

Plaintiffs concede that they cannot establish individualized injury with respect to the seven funds they did not select, but argue that they may challenge these funds with "derivative" claims on behalf of the Plan. *See* Opp. 4. ERISA's authorization of derivative suits, 29 U.S.C. § 1132(a)(2), does not and cannot obviate the threshold constitutional requirement that a plaintiff establish standing to bring that suit. Plaintiffs do not challenge general Plan-wide decisions that affected all participants. Rather, they challenge distinct fiduciary decisions to retain particular investment options, based on particular alleged defects in those funds and the availability of particular alternatives. *See, e.g.*, SAC ¶ 15; Defs.' Mot. to Dismiss Pls.' SAC ("Mot.") (ECF No. 93) 4, 6. Fiduciary decisions regarding funds plaintiffs never held did not cause them any harm. *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017) (dismissing for lack of standing ERISA fiduciary breach claim where the plaintiffs did not invest in challenged funds). Plaintiffs cannot maintain that they are challenging the fiduciaries' entire decision-making process, *cf.* Opp. 5 & n.6, when they concede that the fiduciaries made prudent decisions regarding other Plan options.[2]

Plaintiffs' "class standing" argument is defective for the same reasons. Plaintiffs cannot avoid constitutional scrutiny by simply bringing an action on behalf of a putative class. Mot. 6 n.4. Plaintiffs' claims do not "implicate the same set of concerns" as the claims of absent class members in other funds, which will depend on "different questions of proof" that plaintiffs lack a "sufficiently personal and concrete stake" to develop. *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161–63 (2d Cir. 2014); *see*

---

[2] Plaintiffs' cases regarding *recordkeeping* fees incurred by all participants are inapt. Opp. 5 n.6.

*also Troudt v. Oracle Corp.*, No. 2:16-cv-00175 (D. Colo. Jan. 30, 2018), ECF No. 119, slip op. at 14 ("because no named class representative invested in the PIMCO Fund, I will not certify an imprudent investment class related to that fund at this time").

Plaintiffs have been afforded multiple chances to identify individuals with standing to bring these claims. The time has come to dismiss them with prejudice.

## II. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED ANY FIDUCIARY BREACH IN CONNECTION WITH THE MS FUNDS

### A. Plaintiffs' Disloyalty Claims Are Deficient as a Matter of Law

Plaintiffs do not dispute that ERISA expressly permits financial services companies to offer their own funds to their plans without running afoul of the duty of loyalty, or that the Plan's fiduciaries selected MS-affiliated options for only a small portion of the Plan lineup. Plaintiffs nevertheless claim disloyalty because the Plan offered mutual fund versions of these strategies instead of lower-cost separate accounts, Opp. 8–9, and because three of the funds in retrospect had allegedly poor performance, Opp. 10. Neither theory holds up.

To begin, ERISA does not permit plans to offer affiliated single-client separate accounts. *See* 29 U.S.C. § 1106(b); *see id.* § 1108(b) & PTE 77-3, 42 Fed. Reg. 18,734, 18,734–35 (1977) (providing prohibited transaction exemptions for pooled investment funds maintained by banks or insurance companies (§ 1108(b)(8)) and for mutual funds (PTE 77-3)). The available prohibited transaction exemptions are for pooled products—because a fund's ability to attract third-party investment provides an objective, market-based way of ensuring that fees are reasonable. The MS Funds were a market-tested product offered at a market-determined price, exactly as ERISA contemplates. *See Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892, at *41 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10, 2007) ("When . . . unrelated plans' fiduciaries, independent of the insurer, have determined [that a fee] is reasonable, there is a

3

reasonable basis for allowing the insurer's own plan to make an identical investment in the same account at the same fee."). Plaintiffs now disclaim any argument that it was imprudent to offer mutual funds for these strategies. Opp. 9. Rather, their disloyalty argument entirely depends on the notion that the fiduciaries could have offered these strategies to the Plan as single-client separate accounts, and chose not to. That argument necessarily founders on the statute itself.

Plaintiffs' underperformance allegations with respect to three of the MS Funds likewise do not raise an inference of disloyal decision-making. As discussed below, plaintiffs do not allege performance issues that would have impelled any prudent fiduciary to remove these funds. Plaintiffs concede, as they must, that the funds do not fail even their own standard for fund removal.[3] More generally, even as plaintiffs urge the Court to evaluate the fiduciaries' decision-making "as a whole," Opp. 11, they argue that it should ignore the many indicia of loyal decision-making alleged in the SAC and detailed in the Motion to Dismiss, Opp. 10, including the removal of challenged options during the class period, the repeated selection of non-proprietary options over proprietary alternatives, and the general dominance of non-proprietary options in the Plan's overall lineup. Mot. 7–8; *see* SAC ¶¶ 111, 130. These are not the actions of fiduciaries blindly selecting affiliated products, much less blindly favoring commercially failed products to put the sponsor's interests ahead of those of participants. *See Perez v. First Bankers Tr. Servs., Inc.*, 210 F. Supp. 3d 518, 534 (S.D.N.Y. 2016) ("The duty of loyalty is

---

[3] Plaintiffs' counsel has proposed that a poorly performing asset need be removed only after three years of underperformance: "In the investment advisory business if you underperform the first year, that would be fine. The second year you are likely put on watch. The third year if you continue to underperform, then you are likely going to be replaced." Dec. 15, 2016 Transcript of Pre-Motion Conference at 7:22–8:7. The SAC does not even allege the "three-year *cumulative* performance" plaintiffs now claim is the key figure that should prompt a fiduciary to act; plaintiffs' own allegations show periods of strong performance by all the challenged funds.

4

grounded in the motivation driving a fiduciary's conduct, and liability will not lie where a fiduciary's decisions were motivated by what is best for the [plan] . . . ."). This claim fails.

> B. **Plaintiffs Do Not Plausibly Allege That the MS Funds Were Imprudently Retained**

Three pleadings in, plaintiffs still do not identify allegations supporting the inference that the Plan fiduciaries applied a defective process when selecting and monitoring the MS Funds.

Plaintiffs' fee theories fail: tellingly, plaintiffs do not allege that MS Funds are more expensive than their peer mutual funds. Rather, plaintiffs' challenge depends on their apples-to-oranges comparison of the MS Funds to their separate account variants. *Supra* at 4. For two options (the Mid Cap Fund and the Small Company Fund), plaintiffs identify a single lower-cost comparator (and, for the Mid Cap Fund, a comparator with the *same expense ratio*). Opp. 13; SAC ¶ 131. Plaintiffs' only response to the blackletter law holding that fiduciaries are not required to offer the cheapest possible fund is that they have identified a specific cheaper alternative, Opp. 9—the exact type of allegation the cases reject. Mot. 22.

As noted earlier, the SAC also fails to allege the kind of persistent, long-term underperformance that, per plaintiffs themselves, a prudent fiduciary would have looked for before removing a fund. *See supra* at 5 n.3. Even plaintiffs' cherry-picked fund comparators establish only that the MS Funds had mixed performance over the putative class period, with periods of higher and lower relative returns. Plaintiffs' Opposition contends, for example, that two funds underperformed certain benchmarks during the putative class period. *See* Opp. 13. But the SAC alleges that one of these funds *outperformed* all of plaintiffs' comparator funds in 2013, SAC ¶ 129, and fails to offer year-by-year performance comparisons for the other one, relying instead on cumulative retrospective performance data at the time that fund was removed, *see id*. ¶ 112. Hindsight observations of short periods of poor performance against an otherwise

5

solid performance record are insufficient to state a claim. *See* Mot. 9–13. A single data point does not capture the breadth of considerations a fiduciary prudently takes into account when making investment decisions.

Moreover, plaintiffs fail to grapple with the public, judicially noticeable materials that were available to the Plan fiduciaries at the time they were actually monitoring these funds, which confirm that the funds' performance supported their retention. *See* Mot. 10–11.[4] And plaintiffs offer no allegations suggesting that the fiduciaries had a defective process for monitoring fund performance. On the contrary, plaintiffs' recognition that many of the challenged funds have been *removed* from the Plan, *see, e.g.*, SAC ¶ 111, supports the opposite inference: that the Plan fiduciaries were diligently monitoring the Plan lineup and removing funds as appropriate, affiliated or not.[5]

## III. PLAINTIFFS' PROHIBITED TRANSACTION CLAIMS MUST BE DISMISSED

### A. Plaintiffs' Prohibited Transaction Claims Are Untimely

Plaintiffs argue that their prohibited transaction claims are timely because fiduciaries have an "ongoing" duty to keep participants out of allegedly imprudent funds. Opp. 30. That

---

[4] Plaintiffs argue that defendants improperly relied on extrinsic evidence in showing that Morgan Stanley chose non-affiliated funds for various investment strategies. Opp. 10 & n.12. As defendants have elsewhere explained, this incorporated material is properly considered here. *See* Defs.' Resp. to Pls.' Letter Requesting Conference on Mot. to Strike (ECF No. 97).

[5] Judicially noticeable SEC filings further support the inference that, rather than being oblivious to "mass redemptions," as plaintiffs vaguely contend, defendants reacted quickly to redemptions in the Small Company Fund, removing it from the Plan. *Compare* Form N-Q, September 30, 2015, *available at* https://www.sec.gov/Archives/ edgar/data/836487/000110465915081824/a15-20821_2nq.htm (showing $1.914 billion in net assets for the Small Company Fund as of September 30, 2015) *with* Form N-Q, March 31, 2016, *available at* https://www.sec.gov/Archives/edgar/data/836487/000110465916123634/a16-8756_4nq.htm (showing $1.414 billion in net assets as of March 31, 2016) and Form N-Q, September 30, 2016, *available at* https://www.sec.gov/Archives/edgar/data/836487/ 000110465916123634/a16-8756_4nq.htm (showing $1.058 billion in net assets as of September 30, 2016).

rationale addresses only plaintiffs' fiduciary breach theory, however; it cannot sustain a prohibited transaction claim.  Courts have repeatedly recognized that fiduciary "inaction" is not a transaction.  *See, e.g.*, *David v. Alphin*, 704 F.3d 327, 340–41 (4th Cir. 2013) ("Courts have held that a decision to continue certain investments, or a defendant's failure to act, cannot constitute a 'transaction' for purposes of section 406(a) or 406(b)."); *White v. Chevron Corp.*, 2017 WL 2352137, at *22 (N.D. Cal. May 31, 2017) ("[T]here is no such thing as a 'continuing' prohibited transaction—as the plain meaning of 'transaction' is that it is a point-in-time event"; a prohibited transaction "occurs when a fiduciary takes a particular action with respect to a Plan."); *Patterson v. Capital Grp. Cos.*, No. 2:17-cv-04399 (C.D. Cal. Jan. 23, 2018), ECF No. 60, slip op. at 5 (prohibited transaction claims were time-barred because "Plaintiff knew Defendants had caused the Plan to engage in self-interested transactions when the Plan included [] affiliated funds"). *Tibble*'s analysis of the ongoing nature of the duty to monitor "is inapplicable," as it addressed the scope of "§ 1104's duty of prudence, not the 'prohibited transactions' element of § 1106[.]" *White*, 2017 WL 2352137, at *22.

Plaintiffs also argue that they lacked knowledge of the fiduciaries' process and the reasonableness of the funds' fees.  Opp. 23.  But those facts are not elements of a prohibited transaction under § 1106, and thus plaintiffs did not need to know them to plead § 1106 claims.

### B. Plaintiffs Fail to Plead a Prohibited Transaction in Any Event

The SAC establishes that the Plan is subject to a prohibited transaction exemption, PTE 77-3, because the Plan invested in mutual funds on the same terms as other investors.  The applicability of this exemption is plain from the face of the SAC.  SAC ¶¶ 73, 85–87, 89(a).  Just last week, the District Court for the Central District of California dismissed a materially identical claim because the terms of PTE 77-3 were obviously satisfied where the Plan invested in the challenged mutual funds on the same terms as other shareholders.  *Patterson*, No. CV 17-4399,

ECF No. 60, slip op. at 8–9.  Plaintiffs' prohibited transaction claim fails for the same reasons.

Plaintiffs argue that the mutual fund fees are not reasonable relative to their separate account comparators.  Opp. 21.  But "reasonableness," per se, is not a distinct element of the exemption permitting the offering of affiliated mutual funds.  Mot. 18–19.  What PTE 77-3 requires is that the plan pay the fees that other investors do—the plan's payment of fees that the market will bear *establishes* their reasonableness.  *See Leber v. Citigroup, Inc.*, 2010 WL 935442, at *9 (S.D.N.Y. Mar. 16, 2010); *supra* at 3.  The fiduciaries do not also have to establish that the exemption for investments in affiliated *collective trusts* in § 408(b)(8) is met (Opp. 20 n.33), for the simple reason that mutual funds are not collective trusts.

## IV.    PLAINTIFFS' CHALLENGES TO THE BLACKROCK FUNDS ARE BASELESS

### A.    Plaintiffs' Fanciful Loyalty Claim Must Be Dismissed

Plaintiffs' Opposition confirms that they can only speculate that Morgan Stanley put outside interests ahead of the Plan's in retaining the BlackRock Funds.  Plaintiffs allege a "business relationship" between Morgan Stanley and BlackRock, Opp. 15—an unremarkable connection between two financial services companies—but allege nothing suggesting that the Plan fiduciaries were even aware of this relationship, much less influenced by it, when they opted for BlackRock products that are among the most successful in the retirement business, *see* Mot. 24 (citing VerGow Decl., Ex. T (2010 BlackRock 10-K) at 7, 43).  *See Saint Vincent Catholic Med. Ctrs. v. Morgan Stanley Inv. Mgmt. Inc.*, 2010 WL 4007224, at *2 (S.D.N.Y. Oct. 4, 2010) (the complaint must "raise a right to relief above the speculative level"), *aff'd sub nom. Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013).  The fact that the fiduciaries *removed* the BlackRock funds from the lineup, *see* Mot. 22, conclusively refutes plaintiffs' hypothesis that the fiduciaries were biased and incapable of an objective appraisal of the BlackRock funds.

8

## B. Plaintiffs' Prudence Challenge Is Equally Deficient

Plaintiffs' argument that the BlackRock funds were held imprudently depends on impermissible hindsight. In the SAC, plaintiffs calculate how much a $100 million investment would have grown in plaintiffs' proposed alternative funds *by the end of the class period*. Opp. 17; *see, e.g.*, SAC ¶ 167 (alleging cumulative growth relative to comparators from September 2010 through February 2016). This retrospective analysis is the very definition of a hindsight claim. *See White v. Chevron Corp.*, 2016 WL 4502808, at *8 (N.D. Cal. Aug. 29, 2016) ("[P]laintiffs' focus on the relative performance of stable value and money market funds over the last six years is an improper hindsight-based challenge.").

The few allegations that plaintiffs do offer about relative performance *during* the class period only demonstrate the deficiencies of their theory. Opp. 17. For all but one of the BlackRock funds, the SAC shows the BlackRock fund beating its benchmark and/or comparators in three of the four years identified. SAC ¶ 166, 170, 174, 178, 182, 186. The other BlackRock fund beat its comparators and/or its benchmark in two of the four years. *Id.* ¶ 190.[6] Plaintiff cannot claim that any prudent fiduciary would have removed the funds under these circumstances: even "[p]oor performance" (which plaintiffs have not plausibly alleged) is not alone "sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation." *White*, 2016 WL 4502808, at *17; *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006); *see* Mot. 21. Any inference that the fiduciaries lacked a process for monitoring these funds is undercut by the fact that these funds were ultimately *removed*, showing they were

---

[6] Plaintiffs' contention that the BlackRock Funds "regularly underperformed in each year of the class period" compared to the benchmark, Opp. 17, is thus demonstrably incorrect, as the SAC itself shows in the above paragraphs. The participant disclosures submitted with the Motion to Dismiss likewise demonstrate that the BlackRock Funds regularly beat their benchmarks during the class period. *See* Mot. 21.

9

"attentively monitor[ed]." *White*, 2016 WL 4502808, at *17. Moreover, performance comparisons across different types of target date funds must account for their different structures, Mot. 10–21, but the SAC offers no basis to question the features of the BlackRock funds. Plaintiffs' Opposition attempts to brush past this issue as factual (Opp. 17) when it is actually a pleading deficiency. *See Meiners v. Wells Fargo & Co.*, 2017 WL 2303968, at *3 (D. Minn. May 25, 2017). In the end, the SAC does not remotely allege facts regarding the BlackRock funds that could support an inference of fiduciary imprudence. *See St. Vincent*, 712 F.3d at 716.

Plaintiffs' arguments about the BlackRock funds' fees fare no better. Fiduciaries are not required to minimize fees in derogation of other considerations, as plaintiffs suggest. Opp. 18; *see White*, 2016 WL 4502808, at *10 ("Fiduciaries have latitude to value investment features other than price (and indeed, are required to do so), as recognized by the courts."). Plaintiffs do not in any case plausibly allege that the BlackRock Fund expenses were unreasonable. Tellingly, the SAC does not identify the fees for two of the three purported comparators offered against the BlackRock Funds. *See*, *e.g.*, SAC ¶¶ 161, 166. And alleging that a single alternative fund family was cheaper is insufficient to state a claim—the duty of prudence is not a duty to select only Vanguard funds. *See Meiners*, 2017 WL 2303968, at *3.

## V. PLAINTIFFS' DUTY TO MONITOR CLAIM COLLAPSES WITH THEIR FAILURE TO PLEAD ANY UNDERLYING BREACH

Because plaintiffs fail to plead any underlying breach of fiduciary duty, plaintiffs' failure to monitor claim also fails. *See White*, 2016 WL 4502808, at *19 ("[I]f plaintiffs cannot state a claim [for underlying breach of duty], they cannot maintain a claim that [defendant] failed to monitor the fiduciaries.").

## **CONCLUSION**

The Court should dismiss the SAC with prejudice.

Dated: February 1, 2018
       Washington, D.C.

Respectfully submitted,

/s/  Meaghan VerGow
Brian D. Boyle, *admitted pro hac vice*
Meaghan VerGow, *admitted pro hac vice*
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
bboyle@omm.com
mvergow@omm.com

Pamela A. Miller
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pmiller@omm.com

*Attorneys for Defendants*